**JACKES–EVANS MANUFACTURING
COMPANY, Plaintiff–Appellant
Cross Respondent,**

v.

**Louis J. CHRISTEN, Jr., Defendant–
Respondent Cross Appellant.**

No. 61410.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 23, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 17, 1993.

Jay A. Summerville, St. Louis, for appellant.

Jonathan Isbell, Edwardsville, for respondent.

CARL R. GAERTNER, Presiding Judge.

Plaintiff and Defendant appeal from the judgment entered in the Circuit Court of the City of St. Louis in this action seeking, inter alia, to enforce a non-competition clause in an employment contract.

Defendant, Louis J. Christen, was one of six shareholders and the president of Christen, Inc., a corporation engaged in the business of manufacturing and selling barbecue and fireplace accessories. Christen, Inc., was financially troubled, so Mr. Christen decided to sell the company to pay back creditors and avoid bankruptcy. Mr. Christen entered into negotiations with Plaintiff, Jackes–Evans Manufacturing Company, a corporation engaged in the manufacture of

home heating equipment. Jackes–Evans wanted to expand its product line. Because Mr. Christen desired to obtain future employment and because Jackes–Evans had neither experience nor contacts in the barbecue and fireplace business, Mr. Christen's employment by Jackes–Evans became a key part of the negotiations. Eventually, the parties executed a "Memorandum of Intent" summarizing the contemplated terms of employment in connection with the sale of assets of Christen, Inc. One of the terms expressed in this Memorandum was that Mr. Christen would agree "not to engage in any business in competition with the company for a period of five years after the termination of his employment."

On August 28, 1989, the parties simultaneously executed a purchase agreement and an employment contract. Jackes–Evans agreed to pay Christen, Inc. $1,247,-760.00 for certain assets, including inventory, tools, machinery, equipment, patents, and designs. In addition, Jackes–Evans agreed to employ Mr. Christen as the sales and marketing manager of barbecue and fireplace accessories for a period of one year at a salary of $46,000.00 plus a commission on sales. The employment contract contained a non-competition agreement expressed as follows:

> Commencing on the first day of the time of this agreement and continuing for a period of five years, employee agrees that he will not, in any manner, directly or indirectly, own, manage, operate, join, control, participate in or be connected as a partner, investor, advisor, consultant or otherwise with any business or business entity which is involved in the manufacture and/or sale of home barbecue equipment or fireplace accessories in either the United States or Canada.

Through Mr. Christen's efforts the sales of barbecue and fireplace accessories exceeded Jackes–Evans expectations in the first year. He was offered a new contract as marketing director with an annual salary of $60,000.00. However, because he was dissatisfied with the working conditions and relations with fellow employees and because the new contract eliminated his opportunity to earn commissions on

sales, Mr. Christen refused the new position and terminated his employment with Jackes–Evans at the end of the first year.

He immediately started his own business as a sole proprietor under the name Louis J. Christen and Company, offering consulting services in developing and marketing products. He contacted many of his former suppliers and customers in the barbecue and fireplace accessory business. In the first months after he left Jackes–Evans, Mr. Christen began to establish business relationships with at least three of Jackes–Evans' competitors. He was paid $6,000.00 per month to act as an agent and representative of a Taiwanese trading company which exports barbecue equipment and fireplace accessories to dealers in the United States. He appeared at numerous trade shows and exhibitions and was instrumental in causing Jackes–Evans to lose its largest customer for barbecue and fireplace accessories.

## I.

### INJUNCTION

In the trial court, Mr. Christen admitted he was actively competing with Jackes–Evans but insisted that he was not prohibited from selling or acting as a broker or representative so long as he did not have an ownership interest in a competing company. The trial court accepted this narrow interpretation of the contract and concluded that the language of the non-competition clause precluded only ownership or management activities, not mere employment. Accordingly, the trial court enjoined Mr. Christen from owning, managing or acting as a marketing advisor and consultant to any barbecue and fireplace accessory business, but expressly refused to enjoin him from acting as an employee for any such business.

The basis for this rather paradoxical order was the trial court's conclusion that the contract should be construed pursuant to the rule of *ejusdem generis*. The court expressed its opinion that because all of the prohibited activities listed in the non-competition clause related to ownership or

management, the phrase "or otherwise" could not be construed to include employment.

■ For several reasons, the trial court erred in resorting to the principal of *ejusdem generis*. This rule of construction, sometimes invoked as an aid in construing ambiguous documents where the intent of the parties is not clear, is stated as follows:

> [W]here general words follow particular ones, the general ones will be limited in their meaning and restricted in their operation to things of like kind and nature with those particularly specified. *Payne v. Grimes Real Estate Company*, 660 S.W.2d 755, 757 (Mo.App.1983), quoting *Cades v. Mosberger Lumber Company*, 291 S.W. 178, 179 (Mo.App.1927).

However, the rule has no application where the particular words describe variant and differing things or concepts. *Id.* The prohibition against participating as a partner or investor is quite different than prohibiting a connection with a competitor as an advisor or consultant. The latter concept certainly is broad enough to include an employment relationship. Thus, it was error for the trial court to hold the phrase "or otherwise" did not apply to employment.

Moreover, ascertainment of the intention of the parties in entering into the employment contract and the non-competition agreement is, of course, the cardinal principle regarding judicial interpretation. "In order to determine the intent of the parties, a court will consider the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed upon the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties." *Royal Banks of Missouri v. Fridkin*, 819 S.W.2d 359, 362 (Mo. banc 1991). Viewed in the light of these factors, the evidence points unerringly to the conclusion the parties intended to prohibit Mr. Christen from engaging in any competition, regardless of the guise or form, in the barbecue equipment and fireplace accessory business. Jackes–Evans was entering a new field of commerce in which it possessed neither knowledge, experience, reputation nor contacts with suppliers and customers. Mr. Christen was hired to supply these deficiencies. It would be foolish for Jackes–Evans to purchase Mr. Christen's services for one year and then permit him to destroy what he had brought to Jackes–Evans for the benefit of its competitors. Whether Mr. Christen competed as an owner or as an employee would be of no import whatsoever insofar as the frustration of Jackes–Evans purpose is concerned. Mr. Christen's execution of the subsidiary agreement, the Memorandum of Intent, in which he agreed not to "engage" in any competing business for a five year period is evidence that he was fully aware of and joined in this intent. It is also noteworthy that the contract for the sale of assets, signed by Mr. Christen as President of Christen, Inc., contained a non-competition clause. After leaving his employment with Jackes–Evans, Mr. Christen told some of the suppliers and customers not to tell Jackes–Evans about his dealings with them. Consideration of all these circumstances leads to but a single conclusion regarding the intention of the parties: Mr. Christen agreed not to engage in competition with Jackes–Evans in the barbecue equipment and fireplace accessory business for a period of five years in any form or manner.

Although originally questioning the duration and geographic scope of the covenant not to compete, in his reply brief Mr. Christen concedes, "[t]he parties ... also appear to agree that the non-competition covenant as written is reasonable in scope as to duration and geographic area defined, and as such, may be enforced by a court of equity if the court properly finds proof of breach." The trial court found Mr. Christen engaged in prohibited activities and enjoined him from "engaging in the barbecue equipment and fireplace accessory business through Louis J. Christen and Company" but not as an employee of any other company engaged in such business. The trial court's finding of a violation of the cove-

nant is amply supported by the evidence. The trial court's conclusion of law, that competition as an employee was not prohibited, was erroneous. Accordingly, we reverse the order of the trial court on Count I of Jackes–Evans' petition and remand with directions to issue a permanent injunction enjoining Mr. Christen from engaging in any competition with Jackes–Evans in the business of manufacturing or selling barbecue equipment or fireplace accessories in the United States and Canada.

## II.

### CLAIM FOR DAMAGES

■ Count II of the petition sought damages for alleged tortious interference with business relations and Count III sought damages for alleged unfair competition. Mr. Christen filed a counterclaim seeking damages for alleged fraud, breach of contract, or in quantum meruit. The trial court ruled in favor of Mr. Christen on Counts II and III of Jackes–Evans' petition for the reason that no evidence of damages had been presented. The court also held that Mr. Christen failed to prove the allegations of his counterclaim. Jackes–Evans appeals the adverse judgment on Counts II and III. At issue is a question of procedure.

Count I of Jackes–Evans' petition prayed for a temporary restraining order, a preliminary and a permanent injunction. On May 6, 1991, a temporary restraining order was issued together with an order to show cause why a preliminary injunction should not issue. A hearing on the preliminary injunction was scheduled for June 3, 1991. On May 17, 1991 the parties agreed to reschedule the hearing on the preliminary injunction to June 27, 1991. On June 19, 1991, Mr. Christen's answer and counterclaims were filed. The docket sheet shows the "cause called and heard" on June 27, 28 and July 2, 1991. Plaintiff's reply to the counterclaim was filed on July 17, 1991. On July 30, 1991, the parties filed the following stipulation:

IT IS HEREBY STIPULATED AND AGREED by and between the undersigned counsel for all parties that the hearing held on June 28–29, 1991 (sic) and July 2, 1991 is to be treated as one for permanent injunctive relief.

On September 23, 1991, the court entered its order disposing of all counts of the petition and the counterclaim. The sole basis for the trial court's ruling against Jackes–Evans on Counts II and III was the failure to prove damages. At the time of the hearing, the only issue before the court was the question of whether or not the temporary restraining order should be dissolved or replaced by a preliminary injunction. Proof of specific damages was unnecessary and irrelevant to the only issue before the court at that time. The subsequent stipulation of the parties encompassed only the injunctive relief prayed for in Count I.

■ There are three permissible phases in an injunction proceeding: 1) a temporary restraining order granted against a defendant with or without notice or hearing; 2) a temporary injunction granted after notice and hearing; and 3) a permanent injunction granted after a final disposition on the merits of the case. *Pomirko v. Sayad,* 693 S.W.2d 323, 324 (Mo.App.1985). The court may order or the parties may agree to consolidate steps two and three into a single hearing. Rule 92.02(a)(2); *Pomirko,* 693 S.W.2d at 325.

On the record before us, we agree with Plaintiff's contention that the trial court ruled on Counts II and III prematurely. The parties had been ordered to appear for a hearing for a preliminary injunction, which, after a continuance, they did on June 28. The record is silent as to any intention of the court or the parties to consolidate that hearing into one for a permanent injunction until the July 30 stipulation, nearly a month after the hearing. At no time did the court order nor did the parties agree that the hearing should encompass the respective claims for damages made by the parties. The July 30 stipulation amounted only to a consolidation of the temporary and permanent injunction stages of the proceeding. In providing for such consolidation, Rule 92.02(a)(2) careful-

ly preserves a possible separate claim for damages by requiring that the rule "be so construed and applied as to save to the parties any rights they may have to a trial by jury."

The court also ruled against Mr. Christen on his counterclaim seeking damages for allegedly fraudulent misrepresentations, for breach of contract and in quantum meruit. Although Mr. Christen does not seek a reversal of this ruling from this court, his counterclaim is in the same position as Counts II and III of plaintiff's petition. None of these claims were submitted to the trial court for disposition. Accordingly, we reverse the judgment of the trial court on Counts II and III of plaintiff's petition and on defendant's counterclaim and remand the case to the trial court for further proceedings consistent with this opinion.[1]

## III.

### ATTORNEY'S FEES

■ The employment contract expressly provides for Jackes–Evans to recover its expenses, including attorney's fees, incurred in obtaining injunctive enforcement of the non-competition clause. The trial court's order granting limited injunctive relief is silent regarding attorney's fees. Jackes–Evans contends the court's failure to award attorney's fees as called for in the contract was error. We agree. Where a contract provides for the payment of attorney's fees and expenses incurred in the enforcement of a contract provision, it is error to fail to make such an award to the successful party. *Swift Transportation Company v. Swearengin*, 709 S.W.2d 130, 136 (Mo.App.1986); *General Electric Credit Corporation v. Stover*, 708 S.W.2d 355, 363 (Mo.App.1986). Accordingly, on remand the trial court should make such award as it deems reasonable and proper.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

CRANE and SIMON, JJ., concur.

---

**1.** Whether or not Mr. Christen is barred by collateral estoppel from relitigating the issues raised by his counterclaim, which appear to be identical to the issues pleaded and ruled upon as affirmative defenses, is not before us and we

express no opinion regarding this question. *See King General Contractors v. Reorganized Church*, 821 S.W.2d 495, 500–01 (Mo. banc 1991).