STATE ex rel. Daniel J. COHEN,
et al., Relators,

v.

The Honorable John J. RILEY, Presiding Judge of Division 3 of the Missouri Circuit Court for the Twenty–Second Judicial Circuit, Respondent.

No. 81192.

Supreme Court of Missouri,
En Banc.

June 1, 1999.

Charles W. Armbruster, Wood River, IL, Leonard W. Buckley, Jr., Marc S. Kramer, St. Louis, for Relators.

Lindsay A. Dibler, William F. James, St. Louis, for Respondent.

RONNIE L. WHITE, Judge.

Relators are three attorneys who are defendants in an action, pending before Respondent, that seeks to enjoin them from contacting current clients of plaintiff law firm, the former employer of Relator, Mr. Cohen. Following the issuance of a preliminary injunction, Relators moved for a change of judge under Rule 51.05, an application which was denied as untimely. Upon Relators' petition, this Court entered its alternative order in mandamus requiring Respondent to sustain that motion. Because we find that the preliminary injunction hearing held here was not a trial on the merits, the trial court was bound to sustain the motion, and the writ is made peremptory.

This litigation arises out of the June 1998 departure of attorney Daniel Cohen from the law firm of C. Marshall Friedman, P.C. (Plaintiff), where he was employed as an associate. Upon leaving, Mr. Cohen joined the law partnership Bauer & Baebler, again as an associate. On July 2, 1998, Plaintiff filed an action against Mr. Cohen and the partners of Bauer & Baebler. The petition alleged that Defendants were tortiously interfering with Plaintiff's contractual relations by contacting clients who had worked with Mr. Cohen and soliciting those clients to terminate their representation by Plaintiff. The suit sought an injunction preventing Defendants from contacting Plaintiff's clients as well as compensatory and punitive damages. Defendants counterclaimed, alleging defamation and tortious interference and filed similar third-party claims against individual lawyers of Plaintiff firm. The same day suit was filed, Respondent granted Plaintiff's request for a temporary restraining order prohibiting further client contacts initiated by Defendants and set a hearing on the preliminary injunction for July 9, one week later.

At that hearing, testimony of the various attorneys involved in the dispute was presented, as well as the testimony of a former client of Plaintiff. The following day, July 10, Respondent issued a preliminary injunction prohibiting Defendants from contacting any of Plaintiff's clients. On July 17, Relators applied for a change of judge pursuant to Rule 51.05. Following a hearing, these applications were overruled on August 17, 1998.

Rule 51.05(a) requires that "[a] change of judge shall be ordered in any civil action upon the timely filing of a written application therefor by any party." Upon the filing of a proper, timely application under the rule, the court has no jurisdiction to do anything other than to grant the application and transfer the cause.[1] In order to be timely, "[t]he application must be filed within sixty days from service of process or thirty days from the designation of the trial judge, whichever time is longer. If the designation of the trial judge occurs less than thirty days before trial, the application must be filed prior to any appearance before the trial judge."[2]

---

1. *State ex rel. Raack v. Kohn,* 720 S.W.2d 941, 943 (Mo. banc 1986).

2. Rule 51.05(b).

As noted above, the application in this case was filed well within the time limit specified in the first sentence of Rule 51.05(b). Thus, the question is whether the second sentence applies, that is, whether the trial judge in this matter was designated less that thirty days before trial.

 Respondent contends that the preliminary injunction hearing constituted a "trial," and that the application was therefore untimely, since the application was filed after Defendants appeared to argue in that proceeding. Generally, a preliminary injunction hearing is not, for the purposes of this rule, considered a "trial," meaning a trial on the merits.[3] The trial court may, however, consolidate the hearing with the trial on the merits:

> At any time the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application for a preliminary injunction. Any evidence received upon an application for a preliminary injunction admissible at the trial on the merits becomes part of the trial record and need not be repeated at the trial.[4]

Respondent contends that, because the trial court took evidence at the preliminary injunction hearing, and because the court advised the parties that such evidence would not be revisited at trial,[5] the trial on the merits was effectively commenced by the preliminary injunction hearing. Although the rule provides for the preliminary hearing to become part of the trial record, it does not, thereby, merge the two proceedings. To the contrary, the fact that the rule contemplates that evidence received at the hearing may (if it is admissible at the trial on the merits) be received into the trial record indicates that the two proceedings remain separate. If the preliminary injunction hearing were automatically converted into a part of the trial on the merits merely because evidence was presented, then such a rule would be redundant.

Nor did the trial court's admonishment that evidence presented at the hearing would not be again presented later serve as an order consolidating the two proceedings. An order accelerating the trial on the merits and consolidating it with the preliminary injunction hearing must be clear and unambiguous.[6] In this case, no such clear and unambiguous order of consolidation was entered. Indeed, the language of the trial court's preliminary injunction order strongly implies the opposite, providing that the preliminary injunction shall continue "until a hearing is held on the merits or until further order of the Court."

Respondent contends that allowing a change of judge following a preliminary injunction hearing promotes forum shopping because it permits parties to seek a new trial judge following an adverse ruling by the trial court. We share this concern but have also recognized an important countervailing interest in the liberal allowance of one change of judge as of right:

> [N]o system of justice can function at its best or maintain broad public confidence if a litigant can be compelled to submit his case in a court where the litigant sincerely believes the judge is incompetent or prejudiced. For this reason, we have liberally construed disqualification

---

3. *State ex rel. City of Berkeley v. Clifford,* 976 S.W.2d 569, 571 (Mo.App.1998); *Reproductive Health Servs., Inc. v. Lee,* 660 S.W.2d 330, 347 (Mo.App.1983).

4. Rule 92.02(c)(3).

5. This admonition does not appear in the record and the parties dispute exactly what was said. We assume as true, for the purposes of this appeal, Respondent's representation that the litigants were orally advised that evidence presented would not have to be presented again at the trial on the merits.

6. *Clifford* 976 S.W.2d at 572; *St. Louis Tele-Communications, Inc. v. People's Choice TV,* 955 S.W.2d 805, 807–08 (Mo.App.1997); *State ex rel. Myers Memorial Airport Cmttee., Inc. v. City of Carthage,* 951 S.W.2d 347, 350 (Mo.App.1997).

provisions in favor of the right to disqualify.[7]

Our rules provide the mechanism for balancing these competing interests. Rule 92.02(c)(3) provides that the trial court may "at any time" consolidate the preliminary injunction hearing with the trial on the merits, as long as such a ruling is made explicitly. If, prior to hearing evidence, the trial judge here had announced a consolidation of the preliminary injunction matter with the trial on the merits, a party would have been required by rule 51.05(b) to take a change of judge before proceeding before Judge Riley.

But here no order of consolidation was made. Thus, no trial, within the meaning of Rule 51.05, was commenced prior to Relators' applications for a change of judge. Accordingly, the applications were timely, and the alternative writ of mandamus is made peremptory.

■ Because the preliminary injunction was granted prior to the application for a change of judge, it remains in force, and Relators also seek mandamus or prohibition on different grounds requiring the court to set aside the preliminary injunction. Although relators do not claim that the court lacked jurisdiction or abused its discretion in issuing the injunction, they nevertheless argue that extraordinary relief is warranted because the trial court erroneously declared the law in its preliminary injunction order. While it is true that prohibition lies where "there is an important question of law decided erroneously," a writ is no substitute for appeal, and the error must, therefore, be one "that would otherwise escape review by this Court, and [where] the aggrieved party may suffer considerable hardship and expense as a consequence of the erroneous decision."[8] In this case, the issues decided at the preliminary injunction stage will clearly be revisited at the trial on the merits, and, if the court persists in its allegedly erroneous interpretation of the law, Relators will be able to remedy such an error by appeal. Because the correction of legal errors of this type is not a proper subject for extraordinary relief, the alternative writ previously issued did not address these matters, and the remainder of Relators' petition must be and is, hereby, denied.

BENTON, C.J., LIMBAUGH, COVINGTON and HOLSTEIN, JJ., concur.

WOLFF, J., concurs in separate opinion filed.

PRICE, J., dissents in separate opinion filed.

MICHAEL A. WOLFF, Judge, concurring.

As the dissenting opinion points out, there is little to be said for a "peek and run" system that would allow a litigant to use a trial judge's time and then disqualify the judge after the party gets an unfavorable ruling. However, I believe that a trial judge has sufficient discretion and flexibility under our rules to avoid and deter "peek and run" maneuvers. Our rules accommodate both the need of the judicial system for economy and expedition as well as the desirability of allowing a free change of judge where application is timely made.

The rules of civil procedure govern varying modes of practice in both urban and rural areas, and in a wide variety of civil cases. The pertinent language of Rule 92.02(c)(3) is taken directly from Rule 65 of the Federal Rules of Civil Procedure, which is adapted to the customs of courts throughout the country.

When the trial judge in this case announced, off the record, that the evidence adduced at the preliminary injunction

---

7. *State ex rel. Raack v. Kohn,* 720 S.W.2d 941, 943 (Mo. banc 1986) (internal citations omitted).

8. *State ex rel. Chassaing v. Mummert,* 887 S.W.2d 573, 577 (Mo. banc 1994).

hearing would not need to be repeated at the trial on the merits, he was merely restating the second sentence of Rule 92.02(c)(3), which provides: "Any evidence received upon an application for preliminary injunction admissible at the trial on the merits becomes part of the trial record and need not be repeated at the trial." The real discretion for handling the situation in this case is that the trial judge may order a consolidation of the preliminary injunction with the trial on the merits "at any time" for whatever reason the judge may find suitable. *Id.* In cases such as this one, the evidence produced in support of and in opposition to the motion for preliminary injunction may well be the same evidence that would be heard on the trial on the merits for permanent injunctive relief. A consolidation would eliminate any duplicative effort.

An order of consolidation must be clear and unambiguous. *St. Louis Tele–Communications, Inc. v. People's Choice TV,* 955 S.W.2d 805 (Mo.App.1997); *State ex rel. Myers Memorial Airport Comm. v. City of Carthage,* 951 S.W.2d 347 (Mo.App. 1997). The trial judge did not, as the principal opinion observes, order a consolidation of the preliminary hearing with the trial on the merits, as he was authorized to do by Rule 92.02(c)(3). Had he done so prior to the proceeding, the evidentiary hearing that he held for about a day and a half would have been a "trial" within the meaning of Rule 51.05, and a party's application for change of judge would have been untimely unless it was made prior to the "trial." In fact, after a consolidation order, an application for change of judge would have to be filed "prior to any appearance before the trial judge." Rule 51.05(b) [1]

Our rules and the Federal Rules of Civil Procedure do not define the word "trial."

In the common parlance of lawyers and judges who use the rules, a trial simply is a proceeding where contested issues of fact and law are heard and decided. Rule 92 distinguishes a "trial on the merits" from a "hearing" on a request for preliminary injunction although, just as significantly, the trial judge has the flexibility and discretion to advance the matter and consolidate the two. When the trial judge does that, beyond doubt the judge has set a "trial," which requires the litigants to decide under Rule 51.05 whether to seek a timely change of judge before proceeding with "any appearance before the trial judge." When that consolidation occurs, it is clear that the proceeding to be held is a "trial," or "trial on the merits." The time for the litigant to decide whether to take the change of judge is immediate. If the litigant does not then exercise that right, the litigant's later application cannot be sustained under Rule 51.05 because it is untimely.

There is nothing in the rules that requires a judge to hold a "trial" in any particular sequence. The judge in an equity case may hear evidence at various times over a period of weeks or months. The judge is not precluded from entering interim orders, such as the granting or denial of a preliminary injunction before the completion of the consolidated trial, for purposes such as preserving the *status quo* or preventing irreparable harm.

There is nothing in our rules that forbids the parties from conducting discovery during the pendency of a trial. After the merger of law and equity effected by Rule 42.01, a party in a single civil action may seek both equitable relief and damages. The action at law for damages would require preservation of the right to a trial by

---

**1.** Federal rule 65(a)(2) provides that the order of consolidation may be made "before or after the commencement of the hearing of an application for a preliminary injunction," whereas our Rule 92.02(c)(3) allows such an order "at any time." However, in order for a party to

have meaningful notice that the proceeding is a "trial" and that rule 51.05 would apply, it seems obvious that the consolidation order must be made prior to commencing the "trial." *Cf., Anderson v. Davila,* 125 F.3d 148 (3d Cir.1997).

jury. Rule 92.02(c)(3) [2]. A "trial" also may include a proceeding where evidence is presented for the trial court judge who renders the decision on the equitable claim, and where other evidence or even the same evidence is adduced for the benefit of the jury, which acts as finder of fact on common law claims.[3]

The broad range of discretion as to the management of trials is also illustrated by Rule 66.02, which allows the court, for "convenience" or for reasons of "expedition and economy," to order a separate trial of "any claim . . . or any separate issue or of any number of claims . . . or issues." In this case, for instance, the judge had the discretion to consolidate the preliminary injunction with the trial on the merits and then to hold separate trials on the issues involved in the preliminary injunction matter and the issues on the request for a permanent injunction. In that situation, the proceeding before the judge would have been a trial, and Rule 51.05 would have required a change of judge before the proceeding.

I am not suggesting that trial judges should routinely consolidate a preliminary injunction hearing with the trial on the merits. To their credit, Missouri trial judges have not responded to manipulations by attorneys of Rule 51.05 by their own manipulative readings of the rules in order to escape disqualification. *Cf., State ex rel. City of Berkeley v. Clifford,* 976 S.W.2d 569 (Mo.App.1998). Rather, most judges have responded by expediting transfer to another judge. Even in the most rural circuits, a new, readily available judge can be assigned within a few hours, if need for immediate relief dictates. The new trial judge is free to strike motions to reconsider previous rulings of a predecessor judge, if the new judge senses that the renewed motions are part of a "free peek" scheme. If the new judge holds a hearing on a motion to reconsider the ruling of a predecessor judge and determines that the motion to reconsider was unwarranted, the new judge has appropriate sanctions available under Rule 55.03. Moreover, a Missouri trial judge has the authority to decide a matter under submission before sustaining the motion for a change of judge so that disruption of the adjudication is minimal or non-existent. *Jenkins v. Andrews,* 526 S.W.2d 369 (Mo.App.1975). Thus, in many, perhaps most, cases trial judges will continue to respond by simply sustaining motions for a change of judge, so that a new judge can take over immediately or at least after pending matters under submission are decided by the original judge. No act done by a trial judge is undone merely by a change of judge.

In a case like the present one, where the parties and the judge anticipate that a substantial amount of the court's time may be used hearing evidence on a motion for a preliminary injunction, a consolidation may be ordered explicitly. This would promote economy and expedition and would avoid having two judges holding evidentiary proceedings on essentially the same evidence.

Unlike the dissent, I believe that the trial judge has sufficient authority to avoid and to deter "peek and run" maneuvers under the holding of the principal opinion, without introducing a separate concept of waiver that is not specified in the rules.

I therefore concur in the principal opinion.

WILLIAM RAY PRICE, Jr., Judge, dissenting.

I dissent from the principal opinion because it allows the exercise of a Rule 51.05 automatic disqualification of a trial court judge after the judge has ruled on a substantive matter in the case. In failing to recognize that a party waives the right to

---

**2.** See also, Jackes–Evans Manufacturing Co. v. Christen, 848 S.W.2d 553 (Mo.App.1993); see, generally Hammons v. Ehney, 924 S.W.2d 843 (Mo. banc 1996).

**3.** See, Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

disqualification by submitting a matter to a judge for the exercise of his or her judicial discretion, the principal opinion not only departs from previous Missouri law and the established law in almost all other jurisdictions, but it also will allow no end of wasteful procedural nonsense that will inevitably follow from this newly established rule of "peek and run".

The basis for Missouri's Rule 51.05 automatic disqualification of one trial court judge per side is well established and well reasoned. A party should not be forced to try a dispute before a judge who, for whatever reason, the party believes may not be completely fair and impartial. There is no indication that this was the case here. Relators raised no objection to Judge Riley before submitting this matter to him for ruling plaintiff's request for a preliminary injunction. Only after receiving an unfavorable ruling did Relators seek Judge Riley's disqualification, presumably to search for a judge more sympathetic to their position. This was not the purpose for which Rule 51.05 was established, nor should the rule be transformed into one that mandates forum shopping by a disgruntled litigant.

Missouri law has consistently prohibited utilization of an automatic disqualification after a judge has made a ruling that might indicate his or her inclination on the merits. In *State ex rel. Nassau v. Kohn*, 731 S.W.2d 840, 842, (Mo. banc 1987), it was stated,

> Accordingly we hold that a party who unduly delays the filing of a motion to disqualify under section 472.060 waives his right to automatic disqualification under that statute. Such a rule is necessary in order to prevent the unnecessary burden upon judicial administration caused by an unreasonable delay and **to prevent a party from disqualifying a judge after first determining the judges inclination on the merits.** (emphasis added).

In *State ex rel. Director of Revenue v. Scott*, 919 S.W.2d 246, 248 (Mo. banc 1996),

we specifically recognized as a defense to a Rule 51.05 motion to disqualify that a party's right thereunder "has been waived by allowing the judge to rule on a substantive matter in the case." Finally, in *State ex rel. Bates v. Rea*, 922 S.W.2d 430, 431 (Mo.App.1996), it was noted that,

> A party may waive the right to disqualify a judge if it is clear from the record that a trial **or hearing has commenced, or the cause taken under submission.** (emphasis added, citations omitted).

This same reasoning underlies the reported cases throughout the country. Waiver of an automatic right to disqualify a judge was extensively discussed in Note, *State Procedures for Disqualification of Judges for Bias and Prejudice*, 42 N.Y.U.L.Rev. 484, 508 (1967). There it was said,

> Most automatic disqualification jurisdictions provide, either by statute or by judicial decision, that in addition to filing by a fixed period before the trial, the litigant must also file his disqualifying affidavit before the presiding judge has exercised his judicial discretion. These jurisdictions hold that the judge will be deemed to have exercised his discretion after he has ruled on a preliminary contested motion of law or fact. Thus even if the litigant's disqualifying affidavit is filed well before the fixed stage of the proceeding designated by statute, it will be ineffective if the judge has previously ruled on a contested motion.

* * * * *

> This supplementary limitation is designed to prevent the litigant from delaying disqualification until he has some indication of the judge's receptiveness to his cause. It also aids judicial administration by preventing the replacement of a judge already familiar with the litigation. Automatic disqualification has therefore been held unavailable after a contested motion to amend the com-

plaint, after preliminary hearings, or after a ruling on a demurrer. (footnote omitted).

American Law Reports surveyed cases from around the country concerning the issue of waiver of the right to disqualify a judge by participation in proceedings. There it was said,

> [A]ll of the cases reported herein support, albeit in varying language and with varying explicitness, the proposition that, although the right to a trial before a fair and impartial judge is a valuable right, ... a party should not be permitted to participate in an action or proceeding to the extent that he is able to ascertain the attitude of the judge toward important aspects of his case and then avoid an adverse ruling by belatedly raising the issue of disqualification.

24 ALR4th 877 section 2(a) (1984).

In *Meeting the Challenge:Rethinking Judicial Disqualification*, 69 Cal. L.Rev 1445, 1464 (1981), the author noted that "[d]elay in filing the motion [to disqualify] deserves harsh treatment, because counsel may use disqualification in a manipulative way: not raising the issue if the trial is going well, but filing the motion if the litigant's prospects appear bleak." *See generally, John Leubsdorf, Theories of Judging and Judge Disqualification*, 62 N.Y.U.L.Rev. 237, 240 (1987) (detailing and reconstructing the foundations of federal judicial disqualification law); *Leslie W. Abramson, Deciding Recusal Motions: Who Judges the Judges?*, 28 Val. U.L.Rev. 543, 550 (1994) (discussing, briefly, Missouri disqualification procedures).

In *Pawlowski v. Pawlowski*, 925 P.2d 240, 242 (Wyo.1996), the Wyoming Supreme Court noted that "a party cannot utilize a motion to change a judge as a means of picking and choosing between judges after he or she is given an impression of the court's view on the matter in dispute." The Wyoming rule for change of judge stated that a judge "may be peremptorily disqualified from acting in a case by the filing of a motion requesting that the judge be so disqualified. The motion ... shall be filed within five days after the complaint is filed;...." The court found that under this rule, "a party may waive the right to invoke a peremptory disqualification ... when a party allows a judge to determine substantive material issues in the case to be set for trial." *Id. at 243.*

The Wisconsin Supreme Court also has held that a party may waive the right to substitution of judge by participating in preliminary matters where evidence is received which goes to the merits of the case. *Pure Milk Products Co. v. NFO*, 64 Wis.2d 241, 219 N.W.2d 564, 569 (1974). The holding in *Pure Milk* was later codified in W.S.A. section 801.58 (1986). Since then Wisconsin courts have consistently noted that the reason parties are prohibited from substituting a judge after the judge has ruled on a contested matter is because " 'a litigant who does not like the way a judge is handling a matter should not be able to substitute a second judge simply because the litigant believes things are going badly before the first judge and hopes to obtain a more favorable tribunal.' " *State ex rel. Carkel, Inc., v. Circuit Court for Lincoln County*, 141 Wis.2d 257, 414 N.W.2d 640, 643 (1987) (quoting *State ex rel. Tarney v. McCormack*, 99 Wis.2d 220, 298 N.W.2d 552 (1980)). *See also State v. Chamley*, 568 N.W.2d 607, 619 (S.D.1997) (noting that a criminal defendant's submission of motions to a judge assigned to the case constituted a waiver of defendant's right to seek substitution of judge); *Hanno v. Neptune Orient Lines, Ltd.*, 67 Wash.App. 681, 838 P.2d 1144, 1145 (1992) ("A party has the right to one change of judge, without demonstrating actual prejudice, if he or she files an affidavit of prejudice before the court rules on any motion or issues that require the exercise of discretion."); *Adrian S. v. Superior Court of State*, 190 Ariz. 517, 950 P.2d 593 (1997)(noting that even a stipulated submission to juvenile court may invoke a discretionary ruling that reveals the judge's viewpoint on a significant aspect of

the case; therefore, a stipulated submission may constitute a waiver of a juvenile's right to change of judge); *Juvenile in Mohave Cty. v. Superior Court in and for Cty. of Mohave*, 189 Ariz. 515, 943 P.2d 875 (1997) (same).

Courts similarly have held that a party with knowledge of facts that would disqualify a judge must file the motion to disqualify at the first available opportunity. "One cannot know of improper judicial conduct, gamble on a favorable result by remaining silent as to that conduct, and then complain that he or she guessed wrong and does not like the outcome." *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591, 610 (1998). *See also Streater v. Woodward*, 7 F.Supp.2d 1215 (N.D.Ala. 1998); *City of Las Vegas Downtown Redevelop. Agency v. Hecht*, 113 Nev. 644, 940 P.2d 134 (1997); *Kinard v. Kinard*, 986 S.W.2d 220 (Tenn.App.1998); *Thompson v. State*, 958 S.W.2d 156 (Tenn.Crim.App. 1997).

The danger I foresee from the majority opinion is obvious. The basis for filing a Rule 51.05 motion will shift from protecting judicial integrity and fairness to promoting procedural manipulation and gamesmanship. In any case in which a preliminary matter is ruled within the Rule 51.05 time period, the losing side will inevitably disqualify the disappointing judge in hopes of a more favorable successor. Perhaps attorneys will even attempt to obtain "test" rulings very early in the litigation to discover a judge's inclination. Perhaps, they even will fear a malpractice claim if they do not! Instead of promoting the fair, prompt, and efficient resolution of claims, we will have created a system in which judges are disqualified merely because they must rule in favor of one party and against another and in which preliminary matters must be relitigated and relitigated until all parties have exhausted their Rule 51.05 rights. Lawsuits will become more time consuming and more expensive for all concerned. Worst of all, we will have created an image of justice that

varies from judge to judge instead of one based upon the objective application of legal principles. "Peek and run" will be bad law.

Accordingly, I would quash the order of mandamus.