

# In the Missouri Court of Appeals
# Eastern District

DIVISION FOUR

| | | |
|---|---|---|
| GREG MINANA, | ) | No. ED102206 |
| | ) | |
| Plaintiff/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable David L. Dowd |
| TOM MONROE, et al., | ) | |
| | ) | |
| Defendants/Respondents. | ) | FILED: August 18, 2015 |

Greg Minana ("Appellant") appeals from the trial court's judgment, without an evidentiary hearing, denying his petition for a permanent injunction and declaratory judgment and granting judgment in favor of Tom Monroe, Gerry Richardson, Albert Stutsman, and the Kingsbury Place Homeowners Association ("KPHA") (collectively, "Respondents"), denying Appellant's request for injunctive and declaratory relief. We reverse and remand.

## I. Background

Appellant and Respondents all live on Kingsbury Place, a street located in the City of St. Louis in a neighborhood known as the Central West End. The stretch of Kingsbury Place in question is bounded by Union Boulevard on the East and by Clara Avenue on the West, with Belt Avenue intersecting Kingsbury Place from the South only, approximately halfway between Union and Clara.

Appellant and 41 other homeowners on the western half of Kingsbury Place are governed by the Kingsbury Terrace Association ("KTA"), with KPHA encompassing the 21 eastern-most homes on Kingsbury Place. For clarity's sake, we will refer to Appellant and the rest of the Kingsbury Terrace Association homes as "Kingsbury West," with Respondents and the rest of the KPHA being referred to as "Kingsbury East." The two associations are separated by Belt Avenue.

The Union entrance is the primary source of ingress and egress from Kingsbury Place for all residents. The Clara Boulevard roadway is closed by a permanently locked iron gate, and thus cannot serve as a roadway in or out of the neighborhood. There is an entrance at Belt Avenue blocked by an electronic gate; Appellant claims this gate is primarily used as a "service entrance" for moving trucks, lawn service equipment, etc. It can be opened only by punching in a code, or by an electronic opener that some, but not all residents possess.

Kingsbury Place was developed in the early 1900s by Bell Place Realty Company ("Bell Place Realty") and several individuals with the execution of two deeds, referred to here as the 1902 Deed and the 1906 Deed. Kingsbury East was established in 1902 when Bell Place Realty and Lewis Bierman sold plats to individual buyers and executed and recorded the 1902 Deed, which conveyed the common ground to three trustees: John Harrison, Benjamin Edwards, and Lester Hall (collectively, "the Trustees"). The common ground included the Union entrance to Kingsbury Place, stating the Trustees were "to have and to hold" the private street and Union entrance ". . . subject to the conditions . . . and under the restrictions . . ." provided in the 1902 Deed; the common ground also included the roadways extending from Union to Belt, a 50 foot-wide median, and sidewalks. The control of the Union entrance to Kingsbury Place is the key point of contention of this appeal.

2

The 1902 Deed stated the developers' intention for the Union entrance to be ornamented and for the private street to work as a passage way, and requiring the Trustees to fulfill the purposes and intent of the 1902 Deed, including making the proper repairs to keep the street and Union entrance in good condition. Kingsbury East residents were given express easement rights:

> And all persons who may from time to time be owners of any one or more of the residence lots located in any part of [Kingsbury East]…shall have free ingress and egress to and from said Place and the right to frequent, use, and enjoy the same, as a place or places of passage, resort, and recreation…and the said right of free ingress and egress and to frequent, use and enjoy the said Place for the purposes aforesaid, shall be, and is hereby created and made an easement therein.

Further language in the 1902 Deed expressed the intention to next develop Kingsbury West and preserve future Kingsbury West residents' identical easement rights, provided five conditions enumerated in the 1902 Deed were met regarding Kingsbury West's development.

One of the five conditions listed in the 1902 Deed was that the Kingsbury West common ground would be deeded to the Kingsbury East Trustees, and that this deed should also include a grant of reciprocal easement rights to the Kingsbury East residents to use the Kingsbury West common ground.

The 1902 Deed continued on to state that once the Trustees determined the five conditions had been satisfied, they would accept the conveyance of Kingsbury West's common ground, causing Kingsbury West's easement rights to the Union entrance to vest, with the result being all residents of Kingsbury West and Kingsbury East would enjoy the same easement rights to the Union entrance. The 1902 Deed provided that compliance with the conditions precedent was to be "a question of fact to be ascertained and determined by the Trustees . . ." and that once the conditions were satisfied, the Trustees would accept and record the conveyance, which they did. The 1902 Deed stated:

> [A]ny one or more of said residence lots, whether abutting [Kingsbury East] or [Kingsbury West] shall henceforth and thereafter have and possess equal and concurrent rights to and privileges to and in any and every part of said Place, in its entirety, and to use frequent and enjoy the same.

The 1902 Deed created these easement rights in perpetuity.

The 1906 Deed involved Bell Place Realty and five individuals who deeded plats to individual owners. Both parties agree the 1906 Deed conveyed the common grounds of Kingsbury West to the Trustees, one of the conditions precedent in the 1902 Deed. The Trustees signed, accepted, and recorded this conveyance of Kingsbury West's common ground in fee simple.

The parties dispute what was conveyed via the 1906 Deed. Appellant contends the 1906 Deed conveyed the Kingsbury West common grounds, and was accepted and recorded by the Trustees, and thus residents of both Kingsbury West and Kingsbury East enjoy reciprocal, equal easement rights across all common ground on and along Kingsbury Place. Respondents argue the two deeds merely established two distinct common grounds: the 1902 Deed granted easement rights of use, ingress, and egress to the owners of lots along the East side of Kingsbury Place, and the 1906 Deed established the same easement rights for owners of lots along the West side of the street. They support their contention with the fact that two different neighborhood associations govern the homes on Kingsbury Place, with the Kingsbury Terrace Association governing the 42 homeowners on the western half, and the Kingsbury Place Homeowners Association, or KPHA, governing the 21 easternmost homes on the street.

Generally, both associations enjoy cooperative relations with one another. However, as evidenced by this and prior disputes, the main issue of contention between the two associations is the right to control the Union entrance. The Union entrance

4

features an ornamental gate, which is required by the 1902 Deed to be adequately maintained. Sometimes the gate must be closed for these repairs, but the parties cannot agree on exactly who has made the decision to close the Union entrance in the past - Appellant alleges the two associations jointly agreed to close the Union entrance in 2001 for street sewer repairs, while Respondents argue the KPHA and Kingsbury East acted unilaterally in closing the gate and then, out of courtesy, informed the KTA and Kingsbury West about the closing.

This dispute arose when Respondents asserted their unilateral right to close the Union entrance from the end of November 2013 to mid-January of 2014. A vehicle had crashed into the Union entrance and caused damage, which needed to be repaired. Respondents told Appellant and the rest of Kingsbury West the repairs would take about two weeks, and the KTA jointly agreed with the KPHA to close that entrance during the repairs.

When the repairs had not been completed about a month later, Appellant contacted Respondents asking that the temporary barricades blocking the entrance be removed for six hours so Appellant could host his annual Christmas party. Appellant's request was denied, and Respondents asserted their unilateral right to barricade the Union entrance as they saw fit.

On December 20, 2013, Appellant removed the barricades himself. Respondents called the police, who issued citations to both Appellant and to Tom Monroe, one of the Respondents. Appellant then filed an *ex parte* Petition for Temporary Restraining Order and Preliminary Injunction against Respondents on December 23, 2013, seeking an order to remove the barricades by the next day. The trial court granted Appellant's petition and

5

ordered Respondents to remove the barricade, with Monroe and another Respondent being personally served at about 5 p.m. on December 23. Respondents refused to remove the barricade, so Appellant removed it himself around 11 a.m. on December 24.

Next, Respondents unlocked and opened the Belt Avenue gate and moved to vacate the Temporary Restraining Order because Appellant now had unrestricted access to Kingsbury Place from Belt Avenue. Respondents claim they served Appellant with a copy of their motion and notice, although Appellant claims he never received such notice, and thus was not present at the December 27 hearing. At that hearing, the trial court heard *ex parte* arguments from Respondents, and then issued an order setting aside the Temporary Restraining Order and setting a preliminary injunction hearing for January 17, 2014.

Repairs were finished on January 14, at which time Respondents removed the barricade to the Union entrance. The court continued the hearing, and on May 6, 2014, Appellant filed an amended petition adding KPHA as a defendant and seeking a permanent injunction enjoining Defendants from blocking the Union entrance without a joint agreement between Kingsbury West and Kingsbury East. Appellant also sought a declaratory judgment of his and all other Kingsbury West homeowners' easement rights.

On September 30, 2014, the trial court denied Appellant's petition without an evidentiary hearing, and without allowing any discovery, finding Appellant was suffering no present harm due to the Union entrance then being open. The court further held the 1906 Deed did not establish reciprocal easement rights because it did not contain a reciprocal easement grant over the common ground, and that any easement rights enjoyed by Kingsbury West residents were subject to the neighborhood's rules and regulations,

6

which included Kingsbury East's right to block access to the Union entrance. This appeal follows.

## II. Discussion

Appellant raises three points on appeal. First, Appellant alleges the trial court erred in denying his request for permanent injunctive and declaratory relief because he established an express easement as a matter of law. Appellant argues the 1902 Deed granted Appellant and other Kingsbury West residents express easement rights that vested with the 1906 Deed.

Second, and alternatively, Appellant alleges the trial court erred in denying his request for permanent injunctive and declaratory relief because he established a prescriptive easement. Appellant claims the weight of the evidence established that Appellant's uninterrupted and continued use of the Union entrance for fifteen years created a prescriptive easement, along with the balance of equities supporting such relief.

Third and finally, Appellant alleges the trial court erred in not allowing Appellant to conduct discovery prior to denying his claims. Appellant argues his easement rights were not clear from the two deeds and the facts presented and thus Appellant was entitled to discover additional facts relating to the prior use of the entrance and Respondents' prior conduct.

Standard of Review

When reviewing a court-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence in the light most favorable to the court's decision, disregarding all contrary evidence. Blue Pool Farms, LLC v. Basler, 239 S.W.3d 687, 690 (Mo. App. E.D. 2007). We review all questions of law de novo. Id.

7

"The interpretation of [a] deed, like any contract, is a question of law that we review de novo and without deference to the trial court's interpretation." Erwin v. City of Palmyra, 119 S.W.3d 582, 584 (Mo. App. E.D. 2003) (citing Holbert v. Whitaker, 87 S.W.3d 360, 362 (Mo. App. E.D. 2002)).

Analysis

Appellant's first point alleges the trial court erred in denying his petition for permanent injunctive and declaratory relief because he had established an express easement as a matter of law. He claims the 1902 Deed created easement rights in perpetuity for all Kingsbury Place residents, both East and West, and these rights fully vested with the 1906 Deed. He also argues the trial court erred in its holding that there was no present harm to Appellant due to the Union entrance being currently open.

A trial court hearing a motion for a preliminary injunction should weigh the movant's probability of success on the merits, any threat of irreparable harm absent the injunction, and the balance between the harm itself and any harm the issuance of the injunction would inflict. State ex rel. Dir. of Revenue, State of Mo. v. Gabbert, 925 S.W.2d 838, 839 (Mo. banc 1996).

The trial court found that because the Union entrance had been reopened, no threat of irreparable harm existed. However, with Respondents repeatedly asserting their alleged right to unilaterally control the Union entrance, we agree with Appellants that the threat of irreparable harm does in fact exist. "Irreparable harm is established if monetary remedies cannot provide adequate compensation for improper conduct." Walker v. Hanke, 992 S.W.2d 925, 933 (Mo. App. W.D. 1999). The ability to unilaterally block the primary route of ingress and egress to one's neighbors' homes is irreparable harm unable to be remedied with monetary damages. Thus, if Appellant establishes he and his fellow Kingsbury West residents do have reciprocal easement

8

rights to the Union entrance, an injunction to prevent Respondents from blocking that entrance is a proper remedy.

"Missouri's long-standing, cardinal rule of construction is that a deed must be construed as nearly as may be by the parties' intentions, to be ascertained within the four corners of the instrument, the surrounding circumstances and conditions." Jablonowski v. Logan, 169 S.W.3d 128, 131 (Mo. App. E.D. 2005). The 1902 Deed clearly expresses the intention for Kingsbury Place to function as a single street with all residents having equal rights to entrances and other common grounds. Respondents do not necessarily dispute this was the intention of Bell Place Realty and the other developers.

Respondents contend that the 1902 Deed established five conditions precedent which needed to be satisfied in order for the residents of Kingsbury West to have their easement rights fully vested. However, as stated above, the Trustees had the sole power to determine whether or not the conditions precedent were satisfied (" . . . which compliance shall be a question of fact to be ascertained and determined by the Trustees herein named . . . ."). The 1902 Deed also clearly, unambiguously established the method for the Trustees to demonstrate their acceptance, and what would occur upon that acceptance:

> [T]hen such Trustees shall accept the conveyance to them of [Kingsbury West common ground] and shall evidence such acceptance by formal entry thereof on the original deed of conveyance, in writing, duly signed by them . . . and cause said deed and the written acceptance thereof to be duly recorded in the office of the Recorder of Deeds in and for the City of St. Louis. And thereupon the then owners of [Kingsbury West] . . . shall be possessed of and invested with the same rights of free ingress and egress . . . [of Kingsbury East].

Respondents do not dispute the Kingsbury West common ground was conveyed to the Trustees in the 1906 Deed, nor do they dispute the Trustees accepted this conveyance, signed the conveyance, had it notarized, and then had the conveyance recorded with the Recorder of Deeds.

9

By the clear, unambiguous language of the deed, the Trustees evidenced that they had found the five conditions precedent satisfied, and thus the Kingsbury West residents' easement rights vested upon the recording of this conveyance.

Courts may grant declaratory relief "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." Section 527.120, RSMo (2000).[1] Based on the parties' inability to merely agree upon which of them actually made the decision to close the Union entrance in the past, we find this is an instance "'where it is desirable that the relationship of all the parties be established because there may be a continuing relationship or future acts which depend on the outcome.'" Washington Univ. v. Royal Crown Bottling Co. of St. Louis, 801 S.W.2d 425, 463 (Mo. App. E.D. 1990) (quoting Polk Cnty. Bank v. Spitz, 690 S.W.2d 192, 194 (Mo. App. S.D. 1985)).

We hold that by accepting and recording the conveyance of what is now Kingsbury West's common ground in the 1906 Deed, the Trustees deemed the five conditions precedent satisfied and the Kingsbury West residents' full easement rights vested at that time. Both Kingsbury West and Kingsbury East residents enjoy reciprocal easement rights with respect to the common ground running along Kingsbury Place, including the Union entrance. The trial court's decision to deny declaratory and permanent injunctive relief was against the weight of the evidence present in both the 1902 and 1906 Deeds. Appellant's first point on appeal is granted.

As granting Appellant's first point renders his second and third points moot, our analysis will not reach those points.

### III. Conclusion

We reverse the judgment of the trial court and remand for entry of a declaratory judgment establishing reciprocal easement rights for residents of both Kingsbury East and Kingsbury

---

[1] All further statutory references are to RSMo (2000).

West, as described herein, with respect to Kingsbury Place, the common grounds, and the Union entrance, and permanently enjoining Respondents from interfering with those rights by unilaterally blocking the Union entrance.

_____
ROY L. RICHTER, Judge

Patricia L. Cohen, J., concurs
Robert M. Clayton, III, J., concurs