

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| THE ESTATE OF DONALD ELMO HUTCHISON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GEORGE MASSOOD, INTERSTATE SIGNS, INC., and LYNN OAK COURT COMPANY, L.P., | ) | WD78826 |
| | ) | OPINION FILED: |
| | ) | June 28, 2016 |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LESTER G. MASSOOD, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Marco A. Roldan, Judge**

**Before Division Two:** Victor C. Howard, Presiding Judge, and
Thomas H. Newton and Karen King Mitchell, Judges

George Massood, Interstate Signs, Inc., and Lynn Oak Court Company, L.P., appeal the

trial court's judgment ordering the trustees of the Donald E. Hutchison Trust ("the Trust") and

the Estate of Donald Hutchison ("the Estate") to transfer all of their interest in Interstate Sign and Lynn Oak to Lester Massood.[1] We reverse and remand.

## Facts[2]

George and Hutchison were business associates, and both owned interests in two businesses: Interstate Signs and Lynn Oak. George and Hutchison were the sole and equal general partners of Lynn Oak. They were also limited partners, of which there were several others. George and Hutchison were also the sole and equal stockholders of Interstate Signs. Both businesses were subject to agreements setting forth the manner in which an owner could transfer his interest in the business.

The partnership agreement for Lynn Oak requires that "[a]ny transfer . . . of the interest of any [p]artner . . . , other than upon the death or adjudication of incompetency of [the p]artner . . . shall be made only in compliance with the" agreement's provisions. Specifically, for the transfer of general partnership interests, the partner must first obtain the prior written consent of the partners owning an aggregate two-thirds of the partnership; and for the transfer of limited partnership interests, the limited partner must first tender an offer to the general and limited partners to purchase the interest.

The stockholders' agreement for Interstate Signs contained the following limitation on the transfer of interest:

> No shares of Stock and no interest in any shares of Stock shall be voluntarily transferred by a Stockholder except in accordance with this Agreement, unless all of the parties hereto consent in writing to such transfer. Any transfer not in accordance with this Agreement or without such consent shall be null and void.

---

[1] George Massood is Lester Massood's father. This opinion will refer to Lester Massood as "Massood" and George Massood, when he is referenced individually, as "George." No disrespect is intended.

[2] On appeal from a judgment in a court-tried case, we view the facts in the light most favorable to the judgment. *White v. Dir. of Revenue*, 321 S.W.3d 298, 302 (Mo. banc 2010).

The agreement gives Interstate Signs and the remaining shareholder the right to purchase the stock before either shareholder transfers any interest.

On November 24, 2008, Hutchison created the Trust. The parties agree for purposes of appeal that Hutchison purported to transfer all of his interests in Interstate Signs and Lynn Oak to the Trust. In May of 2009, Hutchison amended the Trust to transfer, upon Hutchison's death, all of his interest in Interstate Signs and Lynn Oak held in the Trust to Massood. Hutchison died in November of 2013. On January 15, 2015, George created and signed a notarized statement indicating that: "I George Massood want the shares from Don Hutchison to transfer to Lester Massood as per Don Hutchison's will[3] and desires." Approximately a month later, George executed a second notarized document, this time stating that "I, George Massood, do hereby declare and state that I approve of the transfer of all business assets of Don Hutchison in whatever state of ownership they are currently in to Lester G. Massood."

Upon Hutchison's death, Massood began receiving Hutchison's half of the monthly proceeds from Interstate Signs and was made a signatory of the business's checking account.[4] In September or October of 2014, Interstate Signs stopped payment on Massood's monthly distribution check and moved the business's funds to a new account, over which Massood was not a signatory.

**Procedure**

In April of 2014, John and Shirley Aaron, as personal representatives of the Estate, filed suit against Massood for unjust enrichment and conversion and against Lynn Oak and Interstate Signs for accounting, alleging, *inter alia*, that in the years before his death, Hutchison did not

---

[3] Hutchison's will directs that all of his property not specifically bequeathed be transferred to the Trust for distribution pursuant to the terms of the Trust.

[4] The record is not clear whether Massood also received distributions from Lynn Oak, or whether he in any way exercised managing partner authority over the limited partnership.

receive all distributions from the businesses to which he was entitled, and that the distributions went to Massood when they should have gone to the Estate. Massood counterclaimed against the Aarons in their capacity as trustees of the Trust,[5] alleging that they had failed to transfer Massood's interest in Lynn Oak and Interstate Signs to him upon Hutchison's death, in accordance with the terms of the Trust. Massood sought relief in the form of compensatory and punitive damages.

In November of 2014, Massood filed an application for temporary restraining order and petition for preliminary injunction, alleging that the Aarons were dissipating the assets of the Trust and requesting that the trial court order them to "immediately release [to Massood] all shares of stock in Interstate Signs, Inc. and any interest in Lynn Oak" held by the Trust. George, Interstate Signs, and Lynn Oak[6] then moved to intervene as plaintiffs. Attached to the Intervenors' motion was a petition for declaratory judgment. Intervenors claimed that Hutchison's attempt, during his life, to transfer his shares in Interstate Signs and his partnership interest in Lynn Oak into the Trust was null and void because the transfer was inconsistent with the terms of the shareholder and partnership agreements. They sought intervention as of right

---

[5] The Aarons were not, in their capacity as trustees, parties to the original petition. They were also not added, in this capacity, to the caption. *See* Rule 55.02 ("Every pleading shall contain a caption setting forth the . . . names of all the parties."). This is not fatal where, as here, the "petition, when taken as a whole, leaves no doubt that the trustee was identified as the real party in interest." *McBee v. Gustaaf Vandecnocke Revocable Trust*, 986 S.W.2d 170, 172 (Mo. banc 1999). Because the Aarons were initially involved in the suit only as personal representatives to the Estate, the question arises whether they needed to be served with process in order to obtain personal jurisdiction over them in this additional capacity. We need not decide this issue, as the Aarons waived personal service by fully participating in the litigation, including entering into a settlement agreement on behalf of the Trust, without ever objecting to lack of service. "[P]ersonal jurisdiction is waived when a party acts inconsistently with a claim that the court lacks personal jurisdiction, . . . or otherwise obtains something of benefit to herself by participating in the proceeding." *Schaeffer v. Schaeffer*, 471 S.W.3d 367, 372 (Mo. App. S.D. 2015); *C.J.G. v. Mo. Dep't of Soc. Servs.*, 219 S.W.3d 244, 248 (Mo. banc 2007) ("A claim of lack of personal jurisdiction may be waived when a defendant makes no motion or pleadings on the issues but otherwise subjects himself to the jurisdiction of the court.").

[6] From this point on, George, Interstate Signs, and Lynn Oak began acting as a single party for purposes of the litigation. When they are referenced collectively, they will be referred to as "Intervenors."

4

and alternatively, permissive intervention, arguing that Massood could not represent their interests. The trial court granted the motion to intervene.

The trial court set the hearing on the request for preliminary injunction for June 4, 2015, and set the trial on the merits for September 18, 2015. At the preliminary injunction hearing, Massood, the Estate, and the Aarons (as trustees) announced that they had reached an agreement settling the various issues between them, and that they wished "to present evidence both on the preliminary injunction and on the settlement that's been reached." They also requested that the trial court approve the settlement. Counsel for Intervenors objected to the trial court holding a hearing on "ultimate issues," when a preliminary injunction hearing had been scheduled; they also objected to what they deemed an effort to "circumvent [the preliminary injunction] process through some settlement agreement which obviously isn't binding upon the" Intervenors. After acknowledging that the hearing was to address the preliminary injunction and stating that the court did not intend to approve the settlement, the trial court determined that it would "go ahead and proceed," noting that, if Intervenors "feel that [the trial court] has no power to go forward, they certainly have the ability to file a writ of prohibition." Intervenors responded that there was "no such intent."

Massood testified regarding the background of the dispute generally, as well as the details of the settlement, which included the Estate and Trust transferring to Massood all interest they had in Interstate Signs and Lynn Oak. Massood's evidence included the Lynn Oak partnership agreement, the Interstate Signs stockholders' agreement, Hutchison's will, the amendment to the Trust granting Massood the interests in Lynn Oak and Interstate Sign, and the two approval documents signed by George. Massood also testified, without objection, that George had never expressed any objection to Massood receiving the interests and that, at a hearing on a different

5

matter several weeks earlier, George had specifically testified that he had no objection to Massood receiving Hutchison's interests in both companies.

During cross-examination of Massood, counsel for Intervenors handed Massood a document, titled Revocation of Declarations and Statements, in which George purportedly revoked the prior "approvals, declarations and consents of George Massood" as they pertained to the transfer of interest in Interstate Signs and Lynn Oak. The document was dated the same day as the hearing and was purportedly signed by George on behalf of himself, Interstate Signs, and Lynn Oak. When questioned about the signature, Massood testified, "I can't tell if it's [George's] signature. It doesn't look like his normal signature." George did not testify, and Intervenors offered no other testimony.

Following the hearing, the trial court determined that the limitations on transfer contained in the Lynn Oak partnership agreement did not apply to prohibit transfers out of the Trust because the restrictions were inapplicable when the transfer was due to the death of the partner, and the transfer that Massood sought here was "caused by the death of Don Hutchison."[7] The court also found that, in any event, George's consent to the transfers to Massood met the conditions for transferring a partner's interests under the partnership agreement. Additionally, the court found that George, the only other shareholder of Interstate Signs, had consented in writing to the transfer out of the Trust to Massood, in accordance with the conditions of the

---

[7] There is an apparent typographical error in the judgment, which at one point "finds that restrictions in paragraph 14 of the Limited Partnership Agreement with respect to the limitation on transfer of an interest in the partnership do not apply when the proposed transfer is caused by the death of a partner." Paragraph 14 of the partnership agreement applies to transfers following the death of a partner. Paragraph 13 imposes restrictions on the transfer of partnership interests, and by its terms does not apply to "transfer[s] upon the death . . . of a [p]artner[, which are] governed by the provisions of [paragraph] 14." Given the context, as well as the trial court's subsequent statements in the judgment making it clear that the trial court believed that paragraph 13's restrictions did not apply due to Hutchison's death, it is clear that this was a simple typographical error and the trial court intended to indicate that paragraph 13 is inapplicable. "Our court may correct this error without remand, where, as here, the record leaves no doubt as to the trial court's intention." *State Dep't of Soc. Servs., Family Support Div. v. Centrec Care, Inc.*, 472 S.W.3d 648, 649 n.2 (Mo. App. E.D. 2015).

6

stockholder's agreement. Finally, the trial court found Intervenors' objections to be "invalid and not lawful objections," and that Intervenors "have agreed that they have presented their claims here in open court . . . and that [Intervenors] agree that the judgment of the court shall be binding on [Intervenors] and that [Intervenors] will follow any ruling . . . with respect to the alleged restrictions of the transfer of the interest in Interstate Signs" and Lynn Oak. The trial court entered judgment in accordance with the settlement agreement,[8] ordering, *inter alia*, that the Estate[9] and Trust transfer all interests in Lynn Oak and Interstate Signs to Massood and that Interstate Signs "show in its official stock transfer book that [Massood] is now the owner of 725 shares."

Intervenors timely filed this appeal.

## Standard of Review

"The standard of review in a court-tried equity action is the same as for any court-tried case; the trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Cook v. McElwain*, 432 S.W.3d 286, 289 (Mo. App. W.D. 2014) (quoting *City of Greenwood v. Marietta Materials, Inc.*, 311 S.W.3d 258, 263 (Mo. App. W.D. 2010)).

## Analysis

In addressing Intervenors' points, we must focus on the claims each party had pending at the time of the preliminary injunction hearing and how the Judgment resolved those claims. Claims pending at the time of the hearing included: (1) the Aarons' claims, as personal representatives, against Massood for unjust enrichment and conversion, as well as their claims

---

[8] In accord with the settlement agreement, the trial court also ordered Massood to pay the Estate the sum of $42,500 and to quit-claim to the Estate certain real estate that had been the subject of separate litigation.

[9] In ordering the Estate to transfer any shares in its possession, the trial court appears to be holding that, assuming the *inter vivos* transfers to the Trust were ineffective, Hutchison's will lawfully directs the transfer of Hutchison's interests in the businesses to Massood.

7

against Lynn Oak and Interstate Signs for accounting; (2) Massood's counterclaims against the Aarons, as trustees, alleging that they had failed to transfer Massood's interest in Lynn Oak and Interstate Signs to him upon Hutchison's death and seeking damages; (3) Massood's petition for preliminary injuction, seeking immediate transfer of the business assets from the Trust; and (4) Intervenors' declaratory judgment action, seeking a declaration that Hutchison's attempt, during his life, to transfer his shares in Interstate Signs and his partnership interest in Lynn Oak into the Trust was null and void because the transfer was inconsistent with the terms of the shareholder and partnership agreements.

The parties to the settlement agreement are the Aarons (as both trustees and personal representatives) and Massood. A settlement is a contract. While parties to a settlement are allowed to settle any and all issues between them, "a contract generally binds no one but the parties thereto, and it cannot impose any contractual obligation or liability on one not a party to it." *Jay Wolfe Used Cars of Blue Springs, LLC v. Jackson*, 428 S.W.3d 683, 689 (Mo. App. W.D. 2014) (quoting *Landstar Invs. II, Inc. v. Spears*, 257 S.W.3d 630, 632 (Mo. App. S.D. 2008)); *Matthes v. Wynkoop*, 435 S.W.3d 100, 107 (Mo. App. W.D. 2014) ("Settlement agreements are contracts and subject to contract law." (quoting *Women's Care Specialists, LLC v. Troupin*, 408 S.W.3d 310, 315 (Mo. App. E.D. 2013))); *Netco, Inc. v. Dunn*, 194 S.W.3d 353, 358-59 (Mo. banc 2006) (declining to hold a non-signatory to an agreement subject to that agreement's arbitration clause). Intervenors were not parties to the settlement agreement. And absent specific circumstances that are not present here, *Scharf v. Kogan*, 285 S.W.3d 362, 370 (Mo. App. E.D. 2009), Intervenors cannot be bound by the agreement. Therefore, the Estate, the Trust, and Massood could not settle claims that Intervenors had pending. Central to resolving the issues in this case is whether the trial court's judgment, which purports to both resolve the

8

petition for preliminary injunction and adopt the terms of the settlement agreement, properly resolved Intervenors' petition for declaratory judgment and resolved, on the merits, other contested issues.

In their three points, Intervenors urge that the trial court committed reversible error in: (1) combining the preliminary injunction hearing with a trial on the merits without agreement from the parties or a clear order consolidating the preliminary injunction and trial; (2) incorrectly interpreting the Lynn Oak partnership agreement to allow the transfer of partnership interests from the Trust to Massood without first giving the remaining partners the right of first refusal; and (3) incorrectly interpreting the Interstate Signs stockholder agreement to allow transfer of ownership from the Trust to Massood without written consent from the remaining shareholders. Because we grant Intervenors' Point I, we need not reach Points II and III.

### A. The trial court improperly combined the preliminary injunction hearing and the trial on the merits.

In their first point, Intervenors argue that the trial court inappropriately consolidated the scheduled preliminary injunction hearing with the trial on the merits of the parties' claims. We agree.

Under Rule 92.02(c)(3), "[a]t any time the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application for a preliminary injunction." Moreover, "[a]ny evidence received upon an application for a preliminary injunction admissible at the trial on the merits becomes part of the trial record and need not be repeated at the trial." *Id.*

However, "[a]n order accelerating the trial on the merits and consolidating it with the preliminary injunction hearing must be clear and unambiguous." *Cook*, 432 S.W.3d at 290 (quoting *State ex rel. Cohen v. Riley*, 994 S.W.2d 546, 548 (Mo. banc 1999)). And the order

9

"consolidat[ing] the preliminary injunction hearing with the trial on the merits must be given in sufficient time to afford a litigant a reasonable opportunity to marshal, and present, its evidence." *Id.* at 291. "Absent such order, a trial court may not adjudicate the merits of a claim for a permanent [relief] on the evidence presented at a hearing on an application for a preliminary injunction unless the parties so agree." *Id.* at 290 (quoting *State ex rel. Myers Mem'l Airport Comm., Inc. v. City of Carthage*, 951 S.W.2d 347, 350 (Mo. App. S.D. 1997)). Therefore, the question before this court is three-fold: (1) whether the trial court adjudicated at the preliminary hearing any permanent relief sought by or against Intervenors; (2) if so, whether the court clearly and unambiguously ordered that the issues on the merits be consolidated with the preliminary hearing and did so at a time that afforded Intervenors a full opportunity to present their case; and (3) if the trial court did not clearly and unambiguously order consolidation, whether Intervenors effectively consented to all issues being resolved at the preliminary hearing.

First, it is clear that the trial court resolved all pending issues on the merits, including Intervenors' petition for declaratory judgment, based on the evidence presented at the preliminary hearing. Massood's petition for preliminary injunction prayed for the immediate release to him of all shares of stock in Interstate Signs and any interest in Lynn Oak owned by the Trust. In response, Intervenors argued that Hutchison's attempted *inter vivos* transfer of business assets into the Trust was ineffective and that, if those assets remained part of the Estate, the propriety of any transfers must be determined by the probate court, where an action regarding the Estate was pending. Similarly, in their petition for declaratory judgment, Intervenors argued that Hutchison's attempted *inter vivos* transfer of his shares in Interstate Signs and his partnership interest in Lynn Oak into the Trust did not comply with stockholder and partnership

10

agreements. In their prayer for relief, Intervenors asked for a declaration of who is entitled to the ownership of interest in the companies formerly owned by Don Hutchison.

In its Judgment the trial court ordered:

> that any interest that the Estate of Donald E. Hutchison has or the Donald E. Hutchison Trust has in Interstate Signs, Inc. and Lynn Oak Court Company LP shall hereby be transferred to the Defendant Lester Massood;
> . . .
>
> that the objections raised by intervening party Interstate Signs, Inc. to the transfer of shares from the Don Hutchison Trust or from the Estate of Don Hutchison to the Defendant Lester Massood are hereby found to be invalid and not lawful objections to the transfer of these interests to the Defendant Lester Massood;
> . . .
>
> that the intervening party Lynn Oak Court Company LP's objections to the transfer of any interest in the partnership held by the estate of Don Hutchison or by Don Hutchison Trust dated November 24, 2008 as amended the Court hereby finds that those objections are not lawfully supported and that any interests that the Estate of Don Hutchison and the Don Hutchison Trust had in Lynn Oak Court Company LP shall now be transferred to the Defendant Lester Massood as per the provisions of the Don Hutchison Trust dated November 24, 2008 as amended;
> . . .
>
> that the Defendant Interstate Signs, Inc. shall show on its official stock transfer record book that Defendant Lester Massood is now the owner of 725 shares of Interstate Signs Inc.;
> . . .
>
> that any interest in the partnership held by Don Hutchison shall be transferred to the Defendant Lester Massood.

Thus, the trial court issued a final judgment, resolving on the merits the issues raised in Intervenors' Petition for Declaratory Judgment, and with other matters for which relief was not sought in the petition for preliminary injunction (i.e., apparently holding, in the alternative, that the business assets could transfer from the Estate to Massood pursuant to Hutchison's will). Massood argues that the trial court's judgment only resolved the petition for preliminary injunction and approved the settlement between him and the Aarons (as trustees), because there were no claims for permanent relief before the court. Massood's claim is two-fold. First, he

11

argues that Intervenors never filed their petition for declaratory judgment following the granting of the motion to intervene and that they, therefore, had no claims pending before the court. But the record shows that the petition was filed contemporaneously with the motion to intervene, which is all that is required. Rule 52.12(c) ("The motion [to intervene] shall state the grounds therefore, and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought."). "Rule 52.12(c) does not require separateness, only that the pleading accompany the motion." *Moxness v. Hart*, 131 S.W.3d 441, 447 (Mo. App. W.D. 2004).

Second, Massood argues that he did not request a permanent injunction. If Intervenors had not properly filed their petition for declaratory judgment, the lack of a petition for permanent injunctive relief might cast doubt on whether the trial court inappropriately resolved a request for permanent relief based solely on evidence presented at the preliminary hearing. *See Dye v. Mo. Dep't of Soc. Servs.*, 476 S.W.3d 359, 362 n.4 (Mo. App. W.D. 2015) (declining to resolve the question of "whether the introduction of evidence to secure a preliminary injunction constitutes the submission of evidence at trial . . . when a preliminary (but not a permanent) injunction is the principle relief sought by a petition"). Although Rule 92.02(c)(3), on its face, appears to apply to any "trial of the action on the merits," we need not address this issue because Massood incorrectly characterizes his counterclaim as merely requesting a preliminary injunction. Massood sought, among other things, "an Order directing the [Trust] to immediately release all shares of stock in Interstate Signs, Inc. and any interest in Lynn Oak . . . to the Defendant Lester Massood." This is not a request for preliminary injunctive relief, which is available only "to preserve the status quo and prevent irreparable injury to the plaintiff pending the disposition of a case on its merits." *Dodson v. City of Wentzville*, 133 S.W.3d 528, 537 (Mo. App. E.D. 2004); § 526.050 (A preliminary injunction is appropriate to "restrain[] the commission or continuance

12

of some act . . . , the commission or continuance of which, during the litigation, would produce injury to the plaintiff, or . . . [to restrain] some act . . . tending to render the judgment ineffectual."). Nor is the trial court's judgment couched in terms of the necessary underpinning for preliminary relief, i.e., "the movant's probability of success on the merits, any threat of irreparable harm absent the injunction, and the balance between the harm itself and any harm the issuance of the injunction would inflict." *Minana v. Monroe*, 467 S.W.3d 901, 907 (Mo. App. E.D. 2015). Rather, the judgment affords permanent relief. Thus, claims for permanent relief were pending before the trial court, and they were resolved by the court's judgment following the preliminary injunction hearing.

Next, we must determine whether the trial court clearly and unambiguously indicated its intent to rule the merits of the case based solely on the evidence presented at the preliminary injunction hearing. *Cook*, 432 S.W.3d at 290. Pursuant to Rule 92.02(c)(3), the trial court "may order a consolidation of the preliminary injunction with the trial on the merits 'at any time' for whatever reason the judge may find suitable," *Cohen*, 994 S.W.2d at 550 (Wolff, J., concurring), "so long as such ruling is made *explicitly*." *Id*. at 549 (emphasis added). Such a ruling may occur before or, conceivably, after the beginning of, the preliminary hearing. *Cook*, 432 S.W.3d at 291. Here, the potential breadth of the preliminary hearing came up, for the first time, at the hearing. There was no explicit ruling from the trial court, and the understanding of what issues were to be tried at the hearing appears to have been, at best, unclear.

There was an extended discussion between counsel for the various parties and the court, before the presentation of evidence began, regarding what was to transpire that day. Intervenors' counsel began by noting that, "it's my understanding that this hearing was noticed up for the

13

hearing on the preliminary injunction and not the underlying case. Am I missing something?"[10] The court then checked the file and confirmed that the "ultimate trial [was set for] September 18, 2015, [and that the] preliminary injunction" was continued "to today's date." Massood's counsel then stated, "we're going to proceed on our preliminary injunction," but noted that he also intended to present evidence of a settlement between Massood, the Estate, and the Aarons. The court then stated its understanding that this would "still leave[] open the permanent injunction, if any." Massood's counsel responded, "well, I guess. I suppose." But then he indicated that Massood and the Aarons (as trustees) had settled "some of the issues that arise out of the preliminary injunction." Specifically, he indicated that the Aarons had agreed to convey certain interest in the companies to Massood, and the settlement "resolves the claims of the plaintiff against the defendant." Intervenors expressed concern that presenting evidence of the settlement might suggest that the trial court approved the terms of the settlement. The court responded, "Certainly, as the court, I'm not here to approve anything. If there's a settlement that's been reached, it's the settlement between two parties." In response, Massood's counsel indicated that he did indeed intend to ask the court to approve the settlement.

There was a lengthy discussion of the settlement, with Intervenors claiming they were completely surprised by the settlement and the Aarons arguing that Intervenors should have been aware that settlement was possible because Intervenors were invited to attend mediation between Massood and the Aarons. Without any further indication from the court of what issues would be addressed at the hearing, the court said, "Let's do this. Let's go ahead and proceed. And, obviously, if [Intervenors] feel that this Court has no power to go forward, they certainly have the ability to file a writ of prohibition against this Court and they have the available means. And

---

[10] This comment appears to be in response to off-the-record discussions preceding the hearing at which Massood and the Aarons (as trustees) notified Intervenors that they had settled.

14

if they intend to do that, obviously, I'll make sure that all proper procedures are followed to allow that writ of prohibition." Intervenors responded that, "there is no such intent, Your Honor." The hearing proceeded, with Massood presenting evidence of the terms of the settlement, as well as how he would be harmed by not having immediate access to the interest in the companies to which he claimed to be entitled.

The record does not support the finding that the trial court explicitly communicated to Intervenors its intent to resolve claims for permanent relief based on the evidence presented at the preliminary injunction hearing. The court never stated clearly or unambiguously what issues were to be resolved at the hearing. The only express statements from the court were its acknowledgement that the hearing was to address the preliminary injunction and that it did not intend to approve the parties' settlement. At most, the court's comments and actions suggested that it would allow Massood to put on evidence of the settlement, which, the court itself noted, "still leaves open the permanent injunction, if any." It was not clear that this evidence would have any effect beyond the decision of whether to grant or deny the relief sought in the petition for preliminary injunction (transfer of any business assets held in the Trust), or that Intervenors would be deprived of any opportunity to provide evidence of their own should they choose not to do so at that hearing.[11]

---

[11] Massood argues that Intervenors were put on notice of the breadth of the hearing by his proposed Judgment, which he claims was filed at the end of the hearing. While the transcript does not indicate that his proposed judgment was filed at that time, whether it was is irrelevant. The issue is whether the *court* clearly and unambiguously put the parties on notice, not how one of the parties interpreted the breadth of the hearing, that is relevant. And even if the proposed order could be interpreted as "notice," its arrival at the end of trial would not have provided notice at a time so as to provide a fair opportunity to be heard. "[N]otice of the trial court's intent to consolidate the preliminary injunction hearing with the trial on the merits must be given in sufficient time to afford a litigant a reasonable opportunity to marshal, and present, its evidence." *Cook v. McElwain*, 432 S.W.3d 286, 291 (Mo. App. W.D. 2014). Certainly, the question of whether a party received notice with "sufficient time" to prepare will often be subject to reasonable debate. But in order to be effective, notice must be received, at a minimum, prior to the *conclusion* of the trial, and not after its completion, which is when Massood claims Intervenors received the purported notice here.

15

"The parties are entitled to a separate trial on the merits before [the ultimate merits are] ruled upon and, thus, they are not required to present their entire case at the preliminary injunction stage." *State ex rel. Koster v. Didion Land Project Ass'n, LLC*, 469 S.W.3d 914, 918 (Mo. App. E.D. 2015). "Because it is likely that one or more of the parties will not present their entire case at the unconsolidated preliminary-injunction hearing, it ordinarily is improper to decide a case solely on the basis of that type of a hearing." *Cook*, 432 S.W.3d at 291 (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 2950 (footnote omitted)). "Entry of [judgment] without trial, and without notice of a consolidation of the trial with the preliminary injunction hearing, is akin to 'a sua sponte summary judgment' entered without notice." *Id.* (quoting Wright at § 2950). "For these reasons, the trial court may not simply adjudicate the merits of a claim for permanent [relief] on the evidence presented at a preliminary injunction hearing." *Didion*, 469 S.W.3d at 918-19.

This is particularly true where, as here, the basis for the permanent relief ordered by the court is factually and legally distinct from the basis for the preliminary relief sought by Massood. Massood's request for a preliminary injunction was directed at the Aarons (as trustees) and was based on the allegation that the Aarons failed to transfer business assets out of the Trust upon Hutchison's death. In contrast, Intervenors' petition for declaratory judgment is based on allegations that the business assets were never properly transferred into the Trust and thus were not subject to transfer to Massood pursuant to the terms of the Trust. Further, Intervenors argued that, if the business assets were never effectively transferred into the Trust, they remain a part of Hutchison's estate, and issues related to disposition of estate assets, pursuant to Hutchison's will, must be addressed by the probate court. While these issues are intertwined, Intervenors' petition for declaratory judgment and any claims regarding Massood's right to assets under the will

16

present factual and legal issues that are unique from those presented by Massood's petition for preliminary injunction.

Finally, we must address whether Intervenors agreed to have claims for permanent relief adjudicated on the merits based on evidence presented at the preliminary injunction hearing. This court has held that, absent a clear and unambiguous order of consolidation, a court may not adjudicate the merits of a claim for permanent relief on the evidence presented at a hearing on the application for preliminary injunction, "unless the parties agree," *Cook*, 432 S.W.3d at 290, or the record indicates that the party opposing adjudication on the merits "did not plan to present a case." *Nelson v. Brentwood Condo. Ass'n*, 742 S.W.2d 233, 236 (Mo. App. W.D. 1987).

Here, the trial court expressly found that:

> the intervening parties have agreed that they have presented their claims here in open court with respect to any objections to the transfer from the Don Hutchison Estate or the Don Hutchison Trust to the Defendant Lester Massood with respect to the two entities Interstate Signs, Inc. and Lynn Oak Court Company LP and that the intervening parties agree that the judgment of the court shall be binding on the intervening parties and that the intervening parties will follow any ruling made by this court with respect to the alleged restrictions of the transfer of the interest in Interstate Signs, Inc. to the Defendant Lester Massood or the transfer of any interest in the partnership Lynn Oak Court Company LP to the Defendant Lester Massood.

We find nothing in the record that supports this conclusion.

As noted *supra*, Intervenors began the pre-hearing discussions by stating, "it's my understanding that this was noticed up for the hearing on the preliminary injunction and not the underlying case." The court confirmed that the ultimate trial was set at a future date and that it was the preliminary injunction hearing that was set for trial that day. The discussion then turned to Massood's plan to put on evidence of a settlement between himself and the Aarons. Noting that the matter was set for only a preliminary injunction, Intervenors "object[ed] to any effort to circumvent that process through some settlement agreement which obviously isn't binding upon

17

us." There is nothing in this exchange that indicates the Intervenors agreed to the entire case being tried on the merits at the preliminary injunction hearing.

Massood argues that Intervenors did consent to the trial court's consolidating the preliminary injunction hearing with the trial on the merits because Intervenors did not object to the trial court proceeding on the merits. Massood relies on Intervenors' response that they did not intend to file a writ when the trial court offered that as a possibility as well as the fact that Intervenors did not file for a writ. There are two problems with this argument. First, as noted *supra*, although the court elected to "proceed," which suggested that Massood would be allowed to present evidence of his settlement with the Aarons, it was unclear that this evidence would be used for anything other than the decision whether to grant the preliminary injunction. Further, Intervenors' decision to exercise their right to appeal—as opposed to filing an extraordinary writ—is hardly the same as consenting to the consolidation of the preliminary injunction hearing with the trial.

A party seeking a writ has "the burden of showing that it had a clear and unequivocal right to the . . . relief requested." *Pub. Sch. Ret. Sys. of Sch. Dist. of Kansas City v. Mo. Comm'n on Human Rights*, 188 S.W.3d 35, 42 (Mo. App. W.D. 2006). Moreover, a writ will issue only if there is a lack of an adequate remedy by appeal. *State ex rel. Riederer v. Mason*, 810 S.W.2d 541, 543 (Mo. App. W.D. 1991). Here, since it was not clear at the time of the hearing that the trial court had decided to consolidate the hearing with the trial, it would have been impossible for Intervenors to show any harm, much less any harm that could not be remedied by an appeal. Accordingly, any attempt by Intervenors to seek a writ in this court before judgment would likely have been a futile gesture.[12]

---

[12] Massood also argues that Intervenors failed to object or raise any complaint regarding the breadth of the hearing in their proposed judgment, filed four days after the hearing. Again, it is not surprising that Intervenors did

Massood appears to argue that, even if the trial court did not give clear and unambiguous notice of consolidation and Intervenors did not consent to consolidation, Intervenors were not prejudiced because they received a full hearing at which they were allowed to present evidence, cross-examine Massood, and offer a number of their own exhibits. This argument has been rejected a number of times. First among "several fundamental defects in this argument" is that "the elements necessary to establish a right to preliminary and permanent injunctive relief are fundamentally different." *Cook*, 432 S.W.3d at 292. "Issuance of a preliminary injunction depends in large part on an assessment of the movant's *likelihood* of success, and the threat of irreparable harm if injunctive relief is not granted *pending a final resolution* of the case." *Id.* By contrast, "at the permanent injunction stage, the trial court must finally determine the merits of the claims—not merely the probability of prevailing—and weigh the harm caused by an order that permanently prohibits or requires a particular action." *Didion*, 469 S.W.3d at 918.

Second, because Intervenors were "not required to present their entire case at the preliminary injunction stage," *id.*, they "may have chosen *not to* present the entirety of their defensive case at the preliminary injunction hearing for any number of reasons: due to inadequate time to prepare; to limit their litigation expenses; or for strategic reasons." *Cook*, 432 S.W.3d at 292 (emphasis added). "The fact that the trial court was not persuaded by the [Intervenors'] presentation at the preliminary injunction hearing does not foreclose the possibility that they would prevail after a full trial." *Id.* Because of the substantial procedural differences between the interlocutory preliminary injunctions and judgments on the merits, a

not object in their post-hearing filing as it was still unclear that the trial court would use the evidence presented at the hearing to resolve requests for permanent relief. In fact, it is telling that Intervenors' proposed judgment focuses solely on Massood's petition for preliminary injunction.

19

hearing on a motion for preliminary injunction simply is not a substitute for the trial on the merits.[13]

Point I is granted.

**Conclusion**

Because the trial court improperly consolidated the hearing on the motion for preliminary injunction with the trial on the merits, we reverse and remand to the circuit court to conduct a trial.

Karen King Mitchell, Judge

Victor C. Howard, Presiding Judge, and
Thomas H. Newton, Judge, concur.

---

[13] Massood also argues that Intervenors have failed to preserve their argument because they did not file a post-trial motion under Rule 78.07(c), which requires that "allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." The argument is without merit. "The purpose underlying Rule 78.07(c) 'is to ensure that complaints about the form and language of judgments are brought to the attention of the trial court where they can be easily corrected, alleviating needless appeals, reversals, and rehearings.'" *Barth v. Barth*, 372 S.W.3d 496, 517 (Mo. App. W.D. 2012) (quoting *Villines v. Phillips*, 359 S.W.3d 44, 48 (Mo. App. W.D. 2011)). Intervenors do not challenge the form of the judgment, the lack of any findings, or the sufficiency of the language of the findings (as opposed to the sufficiency of the evidence *supporting* the findings) in any respect. Intervenors' argument is that they should have received a trial on the merits, and that the trial court deprived them of that opportunity. This is not the type of error that Rule 78.07(c) requires to be addressed in a post-trial motion.