

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, ex rel. ATTORNEY GENERAL CHRIS KOSTER AND MISSOURI DEPARTMENT OF NATURAL RESOURCES, | ) ) ) ) | No. ED101149 |
| | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| | ) | |
| Appellants, | ) | Hon. Richard K. Zerr |
| | ) | |
| vs. | ) | |
| | ) | |
| DIDION LAND PROJECT ASSOCIATION, LLC, THOMAS T. STEWART, DANIEL FETSCH, JUDITH FETSCH and EPIC CONTRACTING, LLC, | ) ) ) ) | |
| | ) | Filed: |
| | ) | September 15, 2015 |
| Respondents. | ) | |

The State of Missouri and the Department of Natural Resources (collectively "the State")

appeal from the trial court's dismissal of its amended petition against the Didion Land Project,

LLC. We reverse and remand.

In 2011, the State filed a petition for injunctive relief and civil penalties against Didion

and its individual owners alleging violations of various Missouri environmental laws. Didion

operated a foundry at a site in St. Charles County until 2009, at which time Didion began

demolition of the foundry facility. The petition alleged that Didion failed to perform an asbestos

inspection or notify the DNR of the demolition. It also alleged that at various times known and

unknown, Didion generated solid waste at the site without determining whether the waste was

hazardous and then unlawfully dumped that solid waste on the ground and in nearby waters. The

State also alleged that on three occasions in 2011, Didion unlawfully refused the DNR access to

the site to conduct a compliance inspection regarding the solid waste. The State asserted that

each of these actions was a violation of a specific environmental statute or regulation. The State sought preliminary and permanent injunctive relief prohibiting Didion from further violations of these laws and civil penalties for each day Didion was in violation.

The State applied for and was granted a temporary restraining order prohibiting Didion from taking any action at the site. The State also applied for a preliminary injunction, and in February of 2012, the court entered the parties' agreed order of preliminary injunction. Therein, Didion was ordered to properly characterize, transport and dispose of various materials at the site. Once completed, Didion would be allowed to prepare the site for construction of a storage building. Foundry sand also was to be characterized and disposed of accordingly. Didion was prohibited from taking any other action at the site. The tasks in the preliminary injunction were to be completed in ninety days.

Shortly thereafter, the State filed a motion to show cause why Didion should not be held in contempt for violating the preliminary injunction. The court held a hearing in April of 2012, after which the parties agreed on a resolution, and the court assessed a civil penalty of $2,000 against Didion for its failure to comply and ordered Didion to obey the orders in the preliminary injunction. In December of 2012, the State moved again to show cause why Didion should not be held in contempt, alleging that only a portion of the hazardous waste and materials had been dealt with, that organic peroxide remained and that new materials were being stored on the site; moreover, Didion had not yet paid the penalty for its first violation of the preliminary injunction. The court entered another order of contempt in which Didion was again ordered to comply with all the court's orders and applicable environmental laws and assessed an additional penalty of $6,000 for failing to pay the earlier assessed penalty and failure to comply with the court's previous orders. In January of 2013, that order of contempt was amended to indicate some completion of the preliminary injunction tasks and to extend the time in which to complete others.

By June of 2013, the parties still disagreed as to whether the tasks in the preliminary injunction had been fully completed. The State filed its third motion to show cause why the court should not hold Didion in contempt, and Didion filed a motion to dissolve the preliminary injunction. The State also filed an application for a new temporary restraining order and preliminary injunction. In July of 2013, the court held a hearing, at the outset of which, it stated expressly that it was taking up the State's motion to show cause and Didion's motion to dissolve the preliminary injunction. The court also granted the State leave to file an amended petition, over no objection from Didion, although it was not actually filed until much later. The parties presented evidence and arguments over two days.

Shortly thereafter, the court issued its "findings and judgment." Therein, the court identified three matters being taken up by the court: the State's motion to show cause, Didion's motion to dissolve the preliminary injunction and the State's new motions for temporary restraining order and preliminary injunction. The court found that there was no longer any hazardous waste at the site and the concerns that necessitated the entry of a temporary restraining order and preliminary injunction no longer existed. It also found that there was no current irreparable harm to justify the issuance of a new temporary restraining order or preliminary injunction. Finally, the court found that while Didion had not further violated the preliminary injunction, it had failed to pay the penalties previously and properly entered for earlier violations. The court denied the State's motion to hold Didion in contempt, denied the application for another temporary restraining order and preliminary injunction and granted Didion's motion to dissolve the preliminary injunction order except as to the $8,000 in civil penalties Didion still owed and as to the foundry sand on site that Didion was still obligated to "deal with" in compliance with all applicable laws.

In November of 2013, the State actually filed the amended petition it had been granted leave to file months earlier. Therein—in addition to repeating the allegations and requests for

relief stated in the original petition—the State alleged that Didion stored hazardous waste at the site from October of 2009 until at least December of 2012 and therefore was a hazardous waste facility and had failed to comply with numerous requirements imposed on such facilities; Didion's storage of hazardous waste without proper security or a contingency plan created a public nuisance; since September of 2010, Didion stored foundry sand, which it intermittently discharged into the waters of the state without a permit; and that sometime during 2012 and 2013, Didion excavated without notice as required of underground facility operators. The State again sought preliminary and permanent injunctive relief prohibiting Didion from further violations of environmental laws and from further public nuisance and sought civil penalties for each day Didion violated those laws. Didion filed a counterclaim for enforcement of the Missouri sunshine law and statutory damages a couple of days later.

The trial court then issued an order directing the parties to "review orders and determine if issues remain" before the court would "entertain trial setting and/or motions to dismiss." The State responded to the court's order with a letter explaining that while the court had concluded there was no necessity for a preliminary injunction, no decision had yet been made on any of the alleged violations of environmental laws or other allegations and requests for relief stated in the amended petition. The State also filed a motion for a trial setting, and the court set a "case review" in January 2014, at which time counsel would pick a trial date. A few days prior to the scheduled case review, Didion filed a motion to dismiss the amended petition, in which it asserted that the parties had a "full and fair trial on the merits" at the July 2013 hearing. Didion claimed that the decision entered after that hearing was a "full and final order," which denied all the injunctive relief and civil penalties requested and which barred further litigation, citing the doctrines of res judicata and collateral estoppel. The trial court granted Didion's motion to

dismiss and denied the State's motion for a trial setting without explanation after a hearing, a transcript of which has not been provided to this Court.[1] This appeal follows.

On appeal, the State contends that the motion to dismiss should have been denied because it relied on matters outside the amended petition—namely the July 2013 hearing and order—without first properly converting the motion to one for summary judgment. The State also argues that the July 2013 hearing and order did not address all the claims set forth in its amended petition, and thus it should not have been dismissed on the preclusion principles asserted by Didion.

First, Didion's motion to dismiss was based solely on res judicata and collateral estoppel. Thus, it is to be treated as a motion for summary judgment, even though proper notice of its conversion thereto was not given, because all the materials necessary to decide the question—namely, the trial court's own file containing its previous rulings that allegedly precluded further litigation—were before the court. See Shores v. Express Lending Services, Inc., 998 S.W.2d 122, 125-26 (Mo. App. E.D. 1999).

More importantly, none of the preclusive principles on which Didion relies apply to the circumstances of this case or justify the trial court's dismissal. Didion argues that the July 2013 order bars further litigation of this case. But the July 2013 order was a preliminary injunction ruling that—like all trial court rulings prior to final judgment—was interlocutory. Res judicata and collateral estoppel apply to *final* judgments and preclude re-litigation of the claims or issues decided therein in *subsequent* causes of action. Allen v. Titan Propane, LLC, 404 S.W.3d 914, 916 (Mo. App. S.D. 2013). Thus, they have no application here to the *interlocutory* rulings of a trial court in an *ongoing* cause of action. Likewise, the law of the case doctrine does not apply to

---

[1] Because it does not specify, the order is deemed to be a dismissal of the petition "without prejudice." Ordinarily, such an order would not be appealable. But because the practical effect of this order was to terminate the litigation—in as much as it was dismissed on preclusion principles—it is appealable. Brown v. Brown-Thill, 437 S.W.3d 344, 351 n.1 (Mo. App. W.D. 2014) (dismissal without prejudice on grounds claims were addressed and resolved in federal litigation appealable because had practical effect of terminating action in form cast).

successive trial court rulings.  American Standard Insurance Company of Wisconsin v. Stinson, 404 S.W.3d 303, 314-15 (Mo. App. E.D. 2012).  Rather, that doctrine requires a trial court to apply appellate court decisions to subsequent proceedings in the case.  Id.  While a trial court has the discretion to decline re-argument of its previous rulings, it also has the discretion to reconsider and change its interlocutory orders at any time prior to entry of final judgment.  See Pathway Financial v. Schade, 793 S.W.2d 464, 470 (Mo. App. E.D. 1990).  The law of the case doctrine does not limit that discretion, and the trial court in this case was not bound under that doctrine to follow any of its earlier decisions.  See id.  None of these preclusive principles support the trial court's dismissal of this case.

It appears that the trial court agreed with the claim in Didion's motion that the July 2013 hearing was a full and fair trial on the merits.  But again, the July 2013 hearing occurred as part of the preliminary injunction phase of this proceeding.  The issuance of a preliminary injunction—and its continued necessity over the course of the litigation—depends on the likelihood of success at trial and the threat of irreparable harm in the meantime.  Cook v. McElwain, 432 S.W.3d 286, 292 (Mo. App. W.D. 2014).  Whereas, at the permanent injunction stage, the trial court must finally determine the merits of the claims—not merely the probability of prevailing—and weigh the harm caused by an order that permanently prohibits or requires a particular action.  Id.  The parties are entitled to a separate trial on the merits before permanent injunctive relief is ruled upon and, thus, they are not required to present their entire case at the preliminary injunction stage.  Id.  For these reasons, the trial court may not simply adjudicate the merits of a claim for permanent injunction on the evidence presented at a preliminary injunction hearing.  Id. at 291.

The trial on the merits may be advanced and consolidated with the preliminary injunction hearing, but only by the clear and unambiguous order of the trial court under Rule 92.02(c)(3) or by agreement of the parties, neither of which exists here.  See id. at 290-91.  To the contrary, the

scope of the July 2013 hearing—as expressly stated at the outset by the court—was limited to the State's motion to hold Didion in contempt and Didion's motion to dissolve the preliminary injunction. The court's order also expressly ruled only on those motions and on the State's requests for a new temporary restraining order and preliminary injunction. Nothing in that order purports to deal with the merits of entering a permanent injunction or granting the other relief requested in the original petition, much less the additional claims stated in the amended petitions. Contrary to Didion's interpretation, the civil penalties ordered in July 2013 addressed only Didion's violation of the preliminary injunction and failure to pay the first monetary penalty issued. There has yet to be a determination of the alleged violations of environmental laws in the past or the propriety of penalties therefor.

We must reverse the dismissal order, order the trial court to reinstate the amended petition and remand for further proceedings consistent with this opinion.

ROBERT G. DOWD, JR., Presiding Judge

Mary K. Hoff, J. and
Roy L. Richter, J., concur.