In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

CORNERSTONE MORTGAGE, INC., ) No. ED108758
 )
 Respondent, ) Appeal from the Circuit Court
 ) of St. Charles County
v. ) 0611-CV04932
 )
KURT PONZAR and SANDRA PONZAR, ) Honorable Thomas J. Frawley
 )
 Appellants. ) Filed: March 9, 2021

 Introduction

 Kurt Ponzar and Sandra Ponzar (“the Ponzars”) appeal from the judgment of the trial

court denying their Motion to Vacate Interlocutory Orders and Enter Judgment of Dismissal and

retroactively declaring that the interlocutory order dated November 23, 2011, was a final

appealable order. The Ponzars raise six points of error on appeal, none of which require reversal.

We affirm.

 Background

 This case has a long and tortured history before this Court. We incorporate the facts and

procedural history as previously determined by this Court in Cornerstone Mortg., Inc. v. Ponzar,

254 S.W.3d 221 (Mo. App. E.D. 2008) (“Cornerstone I”); Cornerstone Mortg., Inc. v. Ponzar,

318 S.W.3d 250 (Mo. App. E.D. 2010) (“Cornerstone II”), and its corresponding unpublished

memorandum, Cornerstone Mortg., Inc. v. Ponzar, ED93337, unpublished mem. (Mo. App. E.D.
June 22, 2010); and Ponzar v. Am. Nat. Prop. & Cas. Co., 405 S.W.3d 562 (Mo. App. E.D.

2013) (per curiam). As relevant to this appeal, the facts are as follows.

 In January 2006, the Ponzars applied with Cornerstone Mortgage, Inc. (“Cornerstone”) to

refinance their existing home loan with a balance of $491,894.96 secured by their residence in

Weldon Springs, Missouri (“the Property”). The Ponzars’ new loan with Cornerstone closed on

January 19, 2006, and, on that date, Mr. Ponzar signed a promissory note (“the Note”), Mr. and

Mrs. Ponzar both signed a Deed of Trust securing their new Cornerstone loan (“the Cornerstone

Loan”) with the Property, and Cornerstone paid $491,894.96 to the Ponzars’ former mortgage

holder to pay off the Ponzars’ former loan. Four days later, the Ponzars sent a letter rescinding

the Cornerstone Loan under the Truth in Lending Act (“TILA”).

 Cornerstone subsequently filed suit for: declaratory judgment to determine both whether

the Ponzars properly rescinded the Cornerstone Loan and, if they did, their liability for the return

of the principal balance of the Cornerstone Loan (Count I); unjust enrichment for the

$491,894.96 payment Cornerstone made to pay off the Ponzars’ former loan (Count II); and

imposition of an equitable lien on the property under the Deed of Trust signed by the Ponzars

(Count III). 1 The trial court granted summary judgment in favor of Cornerstone, which the

Ponzars appealed to this Court. In Cornerstone I, this Court found, as relevant to this appeal,

that the Ponzars successfully rescinded the Cornerstone Loan under TILA, Mrs. Ponzar was not

liable under the Note because she did not sign it, and the Ponzars were required but had failed to

tender payment to Cornerstone for its satisfaction of the Ponzars’ former loan. 254 S.W.3d at

225-30, 233. The case was remanded to the trial court for further proceedings to enforce the

Ponzars’ obligation to tender. Id. at 234.

1
 The Petition also contained a Count IV that Cornerstone later abandoned.

 2
 On remand, the trial court entered judgment in favor of Cornerstone on all three counts

(“the June 2009 Judgment”). On Count I, the trial court declared Mr. Ponzar owed Cornerstone

$491,894.96 under the Note and imposed a lien on both Mr. and Mrs. Ponzars’ interest in the

Property, authorizing Cornerstone to request a writ of execution to the Sheriff’s office for the

purpose of conducting an execution sale to satisfy the judgment and lien if Mr. Ponzar did not

pay the judgment within 30 days. On Count III, the trial court imposed an equitable lien against

Mr. Ponzar’s interest in the Property. Following a jury trial on Count II, the jury rendered a

verdict against both Mr. and Mrs. Ponzar, finding they were unjustly enriched by Cornerstone’s

pay off of $491,894.96 for the former loan. 2 The June 2009 Judgment further directed

Cornerstone could have only one recovery, not duplicative, on the three counts; and ordered the

Ponzars to insure the Property and name Cornerstone as a loss-payee under the policy. On

appeal, this Court in Cornerstone II affirmed the June 2009 Judgment. 318 S.W.3d at 254.

 In accordance with the June 2009 Judgment ordering the Ponzars to add Cornerstone as

an additional insured on the Ponzars’ homeowner’s insurance policy for the Property, the record

includes both a 30-day insurance binder and an Addendum to Binder, both dated July15, 2010.

Both the 30-day insurance binder and the Addendum to Binder purported to add Cornerstone as

an additional insured on the Ponzars’ policy through American National Property and Casualty

Company (“ANPAC”), and while the 30-day insurance binder specified that coverage under the

binder would end 30 days from July 15, 2010, the Addendum to Binder contained no such end

2
 While not relevant to the issues raised in this appeal, we recognize that the trial court in the June 2009 Judgment set
aside and dismissed the jury’s verdict of unjust enrichment against Mrs. Ponzar, finding that a money judgment against
her would be inconsistent with Cornerstone I, and entered judgment against only Mr. Ponzar. Cornerstone appealed
from the trial court’s judgment on Count II, and this Court in Cornerstone II granted Cornerstone’s appeal and
modified the judgment of $491,894.96 for unjust enrichment to be entered against Mr. and Mrs. Ponzar jointly and
severally in accordance with the Deed of Trust signed by both. Cornerstone Mortg., Inc. v. Ponzar, 318 S.W.3d 250,
254 (Mo. App. E.D. 2010).

 3
date. The Addendum to Binder provided that “[a]ny loss or damage arising under this policy

shall first be paid to Cornerstone … to the extent of its judgment lien.”

 In October 2010, Mrs. Ponzar notified the trial court she had filed suggestions of

bankruptcy. Cornerstone applied for relief from the automatic stay of legal action against the

debtor, including enforcement of a judgment, that accompanies bankruptcy filings. 3 The

bankruptcy court granted Cornerstone relief from the stay on December 20, 2010, after a hearing.

The bankruptcy court found that Cornerstone was a secured creditor and party in interest with

respect to Mrs. Ponzar in that Cornerstone was the holder of a final, unavoidable judgment

entered on June 11, 2009, against Mrs. and Mr. Ponzar, which granted Cornerstone a lien on Mr.

and Mrs. Ponzars’ interest in the Property. Accordingly, the bankruptcy court held that “the

automatic stay as set forth in 11 U.S.C. section 362 is terminated, annulled and modified as it

relates to [Mrs. Ponzar’s] right, title and interest in the Property to allow Cornerstone to pursue

all rights and remedies available to Cornerstone with respect to the Property under applicable

non-bankruptcy law.”

 In February 2011, a fire occurred at the Property, and ANPAC determined the net

payable claim to be $62,692.52 for damage to the dwelling, plus an additional $7,347.56 for

damage to the contents. Both Cornerstone and the Ponzars claimed entitlement to the insurance

proceeds. ANPAC filed a petition for declaratory judgment seeking a determination of to whom

it should pay the insurance proceeds. As well, Cornerstone filed for and was granted a writ of

garnishment directed to ANPAC with a return date of October 18, 2011, to garnish the insurance

payment to satisfy the Ponzars’ debt under the June 2009 Judgment.

3
 See 11 U.S.C. section 362(a) (Supp. 2010).

 4
 After a hearing on the various pending claims, the parties in August 2011 agreed ANPAC

would deposit funds of $69,640.08 into the trial court pending further order, fully disposing of all

claims under the garnishment order (“Pay In Order”). Simultaneous to the garnishment

proceedings, in accordance with the June 2009 Judgment, Cornerstone executed a writ of

execution against the Property, conducted a sheriff’s sale, and purchased the Property for

$300,000.00. Finally, Cornerstone filed a motion to disburse the funds, and on November 23,

2011, the trial court granted the motion and ordered the funds in the amount of $69,640.08 be

disbursed to Cornerstone (“Disbursement Order”).

 The Ponzars appealed the Disbursement Order to this Court. Cornerstone Mortg., Inc. v.

Ponzar, ED97872. This Court issued an Order to Show Cause, noting that the Disbursement

Order was not denominated a judgment and was therefore not appealable, and instructed

appellants to file a supplementary legal file with a judgment that complied with Rule 74.01(a). 4

The Ponzars responded by stating their belief the trial court’s Disbursement Order was not a final

appealable judgment, and they requested this Court dismiss the appeal, which this Court did in

March of 2012.

 Meanwhile, the Ponzars and their adult daughter Erika Ponzar filed a separate cause of

action against ANPAC and Cornerstone in St. Louis County. This petition for damages asserted

multiple claims against ANPAC and also a claim against Cornerstone alleging tortious

interference for demanding payment from ANPAC. ANPAC filed a motion for summary

judgment and Cornerstone filed a motion to dismiss, both arguing that the Ponzars’ challenges to

the distribution of the insurance proceeds had already been decided by the Circuit Court of St.

Charles and that re-litigation of the issues was precluded. The trial court granted both motions,

4
 All rule references are to the Missouri Rules of Civil Procedure.

 5
and the Ponzars appealed. This Court affirmed the trial court’s judgment in an order pursuant to

Rule 84.16(b). Ponzar v. Am. Nat. Prop. & Cas. Co., 405 S.W.3d 562 (Mo. App. E.D. 2013)

(per curiam).

 Seven years after the Disbursement Order, Mrs. Ponzar 5 filed a Motion to Vacate

Interlocutory Orders and Enter Judgment of Dismissal (“Motion to Vacate”), requesting that the

August 2011 Pay In Order and the November 2011 Disbursement Order be set aside. Mrs.

Ponzar argued: (1) the writ of garnishment expired on October 18, 2011, and thus the trial court

had no authority to issue the November 23, 2011 Disbursement Order; (2) the trial court did not

have jurisdiction over the res, did not have personal jurisdiction over Mrs. Ponzar, and did not

have subject matter jurisdiction to adjudicate the provisions of her and Mr. Ponzar’s

homeowner’s insurance policy, which was an asset of her bankruptcy estate and thus subject to

an automatic stay preventing any party from taking any action to collect the debt; and (3) the

garnishment proceeding was a “ruse” to collect a judgment owed by Mr. Ponzar from the assets

of Mrs. Ponzar. Mr. Ponzar filed a pro se memorandum in support arguing the trial court did not

have jurisdiction over the proceeds of the insurance policy because, first, Mrs. Ponzar’s pending

bankruptcy case prevented the trial court from adjudicating the policy, which belonged jointly to

Mr. and Mrs. Ponzar; and, second, service of the summons to the garnishee and the sheriff’s

return of service were inadequate to confer jurisdiction over the res in a garnishment proceeding.

Mr. Ponzar also argued the trial court exceeded its jurisdiction in accepting funds into the court

and disbursing the funds before determining what amount was owed by ANPAC to Mr. Ponzar.

5
 At some point, Mr. and Mrs. Ponzar separated legal counsel. Mrs. Ponzar continued with legal representation and
Mr. Ponzar proceeded pro se, but they continued to pursue the same joint interests.

 6
 On October 18, 2019, the trial court issued its Amended Findings, Conclusions, Order

and Judgment denying the Ponzars’ Motion to Vacate and retroactively denominating the

November 2011 Disbursement Order as a final judgment. This appeal follows.

 Discussion

 The Ponzars assert six points of error on appeal. They argue the trial court erred in its

judgment in denying their Motion to Vacate because: the Disbursement Order was not a final

judgment, in that it was not denominated a judgment (Point I); Cornerstone improperly received

duplicative recoveries under multiple counts of the June 2009 Judgment (Point II); the

Disbursement Order was void because the writ of garnishment was improperly served on

ANPAC, the funds to be disbursed were never attached, and Cornerstone did not claim there was

a debt owed solely to Mr. Ponzar (Point III); the trial court had no authority to order insurance

proceeds be disbursed to Cornerstone, in that the writ of garnishment expired prior to the entry of

the Disbursement Order (Point IV); the Disbursement Order was void because the trial court was

enjoined from proceeding with the garnishment action against a debt owed by Mrs. Ponzar, by

virtue of the automatic stay triggered by her bankruptcy filing (Point V); and the Disbursement

Order was void because the bankruptcy court discharged Mrs. Ponzar’s debt in November 2011,

shortly prior to entry of the Disbursement Order, and thus the trial court was enjoined from

proceeding against her (Point VI). We address these points in the order raised and discuss Points

V and VI together, as they involve the same analysis.

 Point I

 In their first point on appeal, the Ponzars argue the trial court erred in finding the

Disbursement Order to be a final judgment because it did not comply with the requirements of

 7
Rule 74.01(a), in that it was not denominated a judgment. Point I is well taken but does not

require reversal.

 The trial court’s October 2019 judgment denying the Motion to Vacate did not reach the

merits of the Ponzars’ motion. Rather, it dismissed the motion after finding the Disbursement

Order was in fact a final judgment despite the lack of denomination; and it retroactively

denominated the Disbursement Order as a final judgment, thus concluding the trial court had lost

jurisdiction pursuant to Rule 75.01 in December 2011, which was 30 days after entry of the final

judgment. We review de novo the scope of the trial court’s determination of its authority under

the rules. See In re Marriage of Jeffrey, 53 S.W.3d 173, 175 (Mo. App. E.D. 2001).

 A final judgment is entered when a writing signed by the judge and denominated a

“judgment” or “decree” is filed. See Mo. R. Civ. P. 74.01(a) (2011). Rule 74.01(a) is strictly

construed, and orders that are not properly denominated a judgment will not be considered final

judgments even if it is obvious they were so intended. See Jaeger v. Res. for Human Dev., Inc.,

561 S.W.3d 455, 457 (Mo. App. W.D. 2018). A trial court retains control over judgments for 30

days after the entry of a final judgment. See Mo. R. Civ. P. 75.01 (2011). Until the judgment is

final, the trial court retains the authority to at any time amend, reverse, or vacate the

interlocutory order. See King v. Sorensen, 575 S.W.3d 239, 243 (Mo. App. W.D. 2018);

Gregory v. Baker, 38 S.W.3d 473, 475 (Mo. App. E.D. 2001). Here, the November 2011

Disbursement Order was not denominated a judgment and thus was not a final judgment under

Rule 74.01(a). Accordingly, Rule 75.01 does not apply and the trial court retained authority to

reopen, amend, or vacate the order until it became final.

 While the trial court here attempted to retroactively denominate the November 2011

Disbursement Order a final judgment and then use this retroactive denomination to conclude the

 8
trial court lost jurisdiction after 30 days in December 2011, an order cannot be retroactively

denominated a judgment in this way. Keck v. Keck, 996 S.W.2d 652, 654-55 (Mo. App. E.D.

1999). “Allowing the use of Rule 74.06(a) to create a retroactive judgment undermines the

express language of Rule 74.01(a) and the reasons for its creation.” Id. Thus, while the trial

court denominated the Disbursement Order a final judgment, this correction has only prospective

application and the trial court retained jurisdiction over the case until the final judgment was

entered in 2019.

 Point I is well taken but does not require reversal because the trial court’s judgment

denying the Motion to Vacate was otherwise correct. We may affirm on any basis supported by

the record. Koehr v. Emmons, 55 S.W.3d 859, 862 (Mo. App. E.D. 2001).

 Point II

 In their second point on appeal, the Ponzars argue the trial court erred in denying the

Motion to Vacate because the Disbursement Order allowed Cornerstone to receive duplicative

recoveries under multiple counts of the June 2009 Judgment, in that Cornerstone had previously

elected to recover under Count I, and thus its garnishment and disbursement motions were

improperly pursuing duplicative recovery under Count II. In response, Cornerstone claims this

argument is being raised for the first time on appeal and must therefore be dismissed. We agree

with Cornerstone and dismiss this Point.

 This Court will not consider arguments raised for the first time on appeal. Osage Mobile

Home Park, LLC v. Jones, 571 S.W.3d 623, 624 (Mo. App. W.D. 2019). While the Ponzars

agree they did not raise this particular argument before the trial court, they claim it falls within

their longstanding argument that Cornerstone was attempting to collect a judgment owed by Mr.

Ponzar from the assets of Mrs. Ponzar, by collecting proceeds from her personal property that

 9
was not included in the bankruptcy-court order granting Cornerstone relief from the stay. This

argument on its face is not the equivalent of an argument of duplicative recovery. Under the

particular facts of this case, the parties and their arguments were so tangled that we will not

presume the trial court understood the Ponzars were making an argument they did not articulate.

Accordingly, Point II is not preserved for this Court’s review and we do not consider the

argument.

 Point II is dismissed.

 Point III

 In their third point on appeal, the Ponzars challenge the trial court’s denial of the Motion

to Vacate by arguing the trial court in 2011 had no authority over the res or Mrs. Ponzar, in that,

first, the proceeds deposited into the trial court were never attached by the sheriff because the

summons served on ANPAC in 2011 was not signed by the sheriff as required by Rule 90.03(a)

and a sheriff deputy signed the return on behalf of the sheriff, contrary to both Rule 90.03(a) and

Rule 54.20(a)(1); and, second, the trial court did not determine there was a debt owed solely to

Mr. Ponzar and the trial court had no authority to determine debts relating to Mrs. Ponzar. We

disagree. 6

 As discussed in Point I, an interlocutory order, such as the Disbursement Order, may be

reconsidered, amended, reversed, or vacated by the trial court at any time prior to the entry of a

final judgment. King, 575 S.W.3d at 243; Around the World Importing, Inc. v. Mercantile Trust,

Co., 795 S.W.2d 85, 88 (Mo. App. E.D. 1990). We review the trial court’s decision to

reconsider, amend, reverse, or vacate an interlocutory order for an abuse of discretion. Universal

6
 While Cornerstone argues the Ponzars raised this claim for the first time on appeal, the record shows that Mr. Ponzar
raised this issue in his pro se Memorandum in support of Mrs. Ponzars’ motion to vacate, and thus the issue was before
the trial court.

 10
Credit Acceptance, Inc. v. Ware, 556 S.W.3d 69, 75 (Mo. App. E.D. 2018). An abuse of

discretion occurs when the decision is clearly against the logic of the circumstances before the

court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack

of careful, deliberate consideration. Id.

 First, the Ponzars here moved to vacate the trial court’s Pay In Order and Disbursement

Order, asserting the trial court in 2011 did not have jurisdiction over the res, Mrs. Ponzar, or the

subject matter. Specifically, the Ponzars claim the trial court in 2011 lacked authority over the

res (namely, the debt owed by ANPAC to the loss-payees under the Ponzars’ homeowner’s

insurance policy) because it never determined that the res deposited into the trial court was

attached by the sheriff, in that the sheriff failed to comply with the rules of service for

garnishment. Garnishment is an ancillary remedy by which a judgment creditor may collect its

judgment by reaching the debtor’s property in the hands of a third party. Grissum v. Soldi, 108

S.W.3d 805, 808 (Mo. App. S.D. 2003). Because garnishment is “purely a creature of statute,”

strict compliance with statutes and rules governing garnishment is essential to confer and support

the trial court’s authority over the action. State ex rel. Eagle Bank & Trust Co. by Roderman v.

Corcoran, 659 S.W.2d 775, 777 (Mo. banc 1983); Grissum, 108 S.W.3d at 808. Service of

summons and a writ of garnishment serves to “attach” the property subject to garnishment, and

the garnishee cannot waive proper service or otherwise consent to a failure to follow the rules as

it relates to attaching the property subject to garnishment. Grissum, 108 S.W.3d at 808-09;

Fulkerson v. Laird, 421 S.W.2d 523, 526 (Mo. App. 1967); see also Mo. R. Civ. P. 90.04 (2011).

The failure to follow garnishment statutes and rules terminates a trial court’s authority to dispose

of the property subject to garnishment. See Grissum, 108 S.W.3d at 808.

 11
 The Ponzars assert failures to follow Rules 90.03(a) and Rule 54.20(a)(1), which govern

the service of summons and writ of garnishment and the return of service, thus depriving the trial

court of authority over the res. Rule 90.03(a) sets forth the procedure for serving the garnishee

with the summons and writ of garnishment, and the rule states that return of service shall be

made as provided in Rule 54.20, which in turn sets forth what proof a plaintiff must present to

the court to establish the proper method of service has been followed. See Russ v. Russ, 38

S.W.3d 895, 897 (Mo. App. E.D. 2001); see also Mo. R. Civ. P. 54.20 (2011); Mo. R. Civ. P.

90.03(a) (2011). As relevant, Rule 54.20(a)(1) provides that “[e]very officer to whom summons

or other process shall be delivered for service within the state shall make return thereof in writing

as to the time, place and manner of serving of such writ and shall sign such return.”

 Here, contrary to the Ponzars’ claims, we find the return of service was regular on its

face, in that it stated the time, place, and manner of serving the writ, and it was signed by the

deputy sheriff who served the summons, as required by Rule 54.20(a)(1) and Rule 90.03. A

sheriff’s return of service that is regular on its face is presumed conclusive. See In re Marriage

of Bugg, 613 S.W.2d 204, 205 (Mo. App. W.D. 1981). To the extent the Ponzars assert it was

error for the summons and writ to be served by the deputy sheriff rather than the sheriff, the

version of Rule 90.03(a) that was in effect in 2011 did not require service by the sheriff. The

language “by the sheriff” was added to subdivision (a) by Supreme Court order dated June 20,

2013, which was well after service was effected in this case. Mo. R. Civ. P. 90.03, Historical

and Statutory Notes. Rather, Rule 90.03(a) in 2011 stated: “[t]he garnishee shall be served with

summons and the writ of garnishment. Service shall be as provided in Rule 54.13,” which in turn

provided that “[s]ervice of process within the state, except as otherwise provided by law, shall be

 12
made by the sheriff or a person over the age of 18 years who is not a party to the action.” Mo. R.

Civ. P. 90.03; Mo. R. Civ. P. 54.13.

 Because service was proper, this notice of garnishment had the effect of attaching the res

and establishing the trial court’s authority over the property in the garnishment proceeding. See

Grissum, 108 S.W.3d at 808-09); see also Section 525.040, RSMo. (cum. supp. 2011) (properly

served notice of garnishment shall have effect of attaching res in garnishee’s possession). Thus,

there was no abuse of discretion in the trial court’s denial of the Ponzars’ Motion to Vacate on

these grounds.

 Second, the Ponzars argued in their Motion to Vacate the trial court lacked jurisdiction in

2011 because Cornerstone did not claim ANPAC owed a debt to Mr. Ponzar only. We

understand this argument as attacking the trial court’s authority to determine any debts or assets

owned by Mrs. Ponzar in light of the bankruptcy court’s automatic stay. The Ponzars challenge

this issue more specifically in Points V and VI, and we will address it there.

 Point III is denied.

 Point IV

 In their fourth point on appeal, the Ponzars argue the trial court erred in denying the

Motion to Vacate the Disbursement Order because the trial court had no authority to order

insurance proceeds disbursed to Cornerstone on November 23, 2011, in that the writ of

garnishment expired on October 18, 2011. We disagree.

 Service of summons and a writ of attachment in a garnishment action “attaches” the

property subject to garnishment between the time the notice is served and the time of the return

date on the writ. Corcoran, 659 S.W.2d at 777. Once this attachment is completed, the actual

seizure of the property so attached must be made by order of delivery after the date of service

 13
and before the return date of the writ. Id. In other words, the property subject to garnishment

must be delivered to the court or party before the return of the date of the writ. Once the

property subject to garnishment is delivered to the court, the garnishment is discharged. See Mo.

R. Civ. P. 90.10(a)-(b) (2011) (to discharge writ of garnishment, garnishee shall pay or deliver

the property subject to garnishment into the court, either (a) voluntary or (b) in accordance with

court order determining controverted issues).

 Here, ANPAC was served with the summons and writ of garnishment on May 18, 2011,

with a return date of October 18, 2011. After a hearing on Cornerstone’s exceptions and

ANPAC’s petition for declaratory judgment, the trial court on August 9, 2011, issued the Pay In

Order instructing ANPAC to pay into the court $69,640.08 for insurance proceeds covering fire

losses to the dwelling and contents owed to the loss-payees under the Ponzars’ homeowner’s

insurance policy for the Property. The court stated the Pay In Order “fully dispose[d] of all

claims which have been asserted by or against ANPAC with respect to the garnishment.” All

parties signed their consent to the Pay In Order confirming delivery to the court and release of

the garnishment against ANPAC. ANPAC so delivered to the court the property subject to

garnishment, and on August 17, 2011, the docket sheet indicated the Return on Garnishment was

released.

 These facts demonstrate here that the property subject to garnishment (the insurance

proceeds) was delivered to the court after the date of service and before the return date, thus

discharging the garnishee under Rule 90.10. While the Ponzars rely on Fulkerson to argue the

trial court lost authority over the property subject to garnishment on October 18, 2011, Fulkerson

is inapposite because, in that case, the property had not been delivered to the court before the

return date. Cf. Fulkerson, 421 S.W.2d at 527 (return date was January 20, 1964, but summons

 14
was not delivered until March 27, 1964). Because the garnishment was released by delivery of

the property to the court before the return date, the trial court did not lose authority over the

property already in its possession on October 18, 2011. See Corcoran, 659 S.W.2d at 777.

There was no error in the trial court’s denial of the Motion to Vacate on these grounds.

 Point IV is denied.

 Points V and VI

 In their fifth and sixth points on appeal, the Ponzars argue the trial court erred in denying

the Motion to Vacate because the trial court was enjoined from continuing with the garnishment

action and entering the November 23, 2011 Disbursement Order by: (1) the bankruptcy court’s

automatic stay from proceeding with the garnishment action against a debt owed by Mrs. Ponzar

(Point V); and (2) the bankruptcy court’s discharge order dated November 4, 2011 (Point VI).

We disagree.

 a. Points V and VI are not Precluded by this Court’s Prior Decision in Ponzar v. Am.

 Nat. Prop. & Cas. Co., 405 S.W.3d 562 (Mo. App. E.D. 2013) (per curiam).

 Initially, we address Cornerstone’s argument that this Court’s decision in Ponzar v. Am.

Nat. Prop. & Cas. Co., 405 S.W.3d 562 (Mo. App. E.D. 2013) (per curiam), precludes re-

litigation under theories of law of the case, res judicata, and collateral estoppel of the issue of

whether the trial court had the authority to determine to whom the ANPAC insurance proceeds

were owed. We review de novo whether a claim was barred by res judicata or collateral estoppel

as a matter of law. See Mueller v. Lemay Bank & Trust Co., 990 S.W.2d 690, 693 (Mo. App.

E.D. 1999).

 The St. Charles circuit court in this case entered its Disbursement Order in 2011, which

was an interlocutory order on the merits, finding that Cornerstone was the proper recipient of the

 15
ANPAC insurance proceeds. The Ponzars did not attempt to obtain a final judgment to appeal

the merits but rather attempted a collateral attack by filing a separate suit against ANPAC and

Cornerstone in the St. Louis County circuit court. The St. Louis County circuit court granted

ANPAC’s and Cornerstone’s motions to dismiss and for summary judgment, agreeing the

Ponzars’ claims were barred by the doctrines of res judicata and collateral estoppel because those

claims had previously been decided in the interlocutory Disbursement Order. The St. Louis

County circuit court’s decision was upheld on appeal in Ponzar, in an order pursuant to Rule

84.16(b). Now Cornerstone argues that the law of the case, res judicata, and collateral estoppel

likewise bar the Ponzars’ Motion to Vacate the interlocutory Disbursement Order. We do not

agree.

 “Res judicata and collateral estoppel apply to final judgments and preclude re-litigation

of the claims or issues decided therein in subsequent causes of action. Thus, they have no

application here to the interlocutory rulings of a trial court in an ongoing cause of action.” State

ex rel. Koster v. Didion Land Project Assoc. LLC, 469 S.W.3d 914, 918 (Mo. App. E.D. 2015).

Here, the Disbursement Order was not a final judgment but was an interlocutory order in an

ongoing cause of action and thus could not serve as the basis of either res judicata or collateral

estoppel. See id. Thus, the decision in Ponzar, which allowed the interlocutory Disbursement

Order to preclude further litigation of the issue of to whom the ANPAC insurance proceeds

would be paid, cannot have preclusive effect on the Motion to Vacate the Disbursement Order.

Rather, the Disbursement Order could be reopened and amended or vacated at any time before a

final judgment was entered. 7 See Rule 75.01; King, 575 S.W.3d at 243.

7
 To the extent this Court’s earlier decision in Ponzar v. Am. Nat. Prop. & Cas. Co., 405 S.W.3d 562 (Mo. App. E.D.
2013) (per curiam), conflicts with this Court’s later decision in State ex rel. Koster v. Didion Land Project Assoc.

 16
 Similarly, the doctrine of law of the case does not apply here. The law-of-case doctrine

provides that a previous appellate decision in a case precludes litigation of the issue on remand

and subsequent appeal. Am. Family Mut. Ins. v. Coke, 413 S.W.3d 362, 371 (Mo. App. E.D.

2013). This doctrine applies only to subsequent proceedings within the same case. See Brown v.

Kirkham, 23 S.W.3d 880, 883 (Mo. App. W.D. 2000) (finding law-of-case doctrine did not apply

in separate cases, even though both stemmed from same facts). Here, Cornerstone attempts to

apply the appellate decision in Ponzar, to the present case; however, because they are separate

cases, the doctrine of law of the case is not appropriate. To the extent Cornerstone argues the

trial court’s earlier interlocutory order in the present case prevents later reconsideration of the

same issue, the doctrine of law of the case does not apply to interlocutory rulings in an ongoing

cause of action. See State ex rel. Koster, 469 S.W.3d at 918.

 b. The trial court did not abuse its discretion in denying the Motion to Vacate.

 Turning to the merits of Points V and VI, the Ponzars assert error from the trial court’s

denial of their Motion to Vacate the 2011 Disbursement Order. Again, we review the trial

court’s decision to reconsider, amend, reverse, or vacate an interlocutory order for an abuse of

discretion. Universal Credit Acceptance, 556 S.W.3d at 75. The Ponzars argue that the trial

court’s actions in 2011 were enjoined, first, by the automatic bankruptcy stay under 11 U.S.C.

section 362(a) (Supp. 2011) (filing for bankruptcy acts as automatic stay upon commencement or

continuation of legal action “against the debtor” and of enforcement of judgment or lien obtained

against debtor before commencement of bankruptcy case), and, second, by the bankruptcy

discharge under 11 U.S.C. section 524(a) (Supp. 2011) (discharge after bankruptcy voids

LLC, 469 S.W.3d 914, 918 (Mo. App. E.D. 2015), regarding the preclusive effect of interlocutory rulings in an ongoing
cause of action, it is better practice to follow the most recent published caselaw from our own Court.

 17
judgment of personal liability of debtor with respect to discharged debt, and operates as

injunction against commencement or continuation of action to collect or recover debt “as a

personal liability of the debtor”), both of which rendered void any legal action by Cornerstone

against Mrs. Ponzar. While the Ponzars portray Points V and VI as a jurisdictional question, the

issue before the trial court in 2011 was ANPAC’s motion for declaratory judgment to determine

to whom they should pay the insurance proceeds, which were claimed by both the Ponzars, as

owners of the homeowner policy, and Cornerstone, as a loss-payee under the terms of the policy.

The trial court determined in the Disbursement Order that the proceeds should be paid to

Cornerstone. Again, however, the issue we consider on appeal here is not whether the

Disbursement Order was correctly decided but whether the trial court abused its discretion in

denying the Motion to Vacate eight years later.

 Here, the record shows that in July 2010 the Ponzars added Cornerstone as an additional

insured on their homeowner’s insurance policy for the Property, in accordance with the June

2009 Judgment, which so ordered. After the Property was damaged in a fire, the Ponzars

nevertheless appeared to argue they were entitled to the insurance proceeds because, despite the

directive of the June 2009 Judgment, they only added Cornerstone as a loss-payee under the

policy for 30 days. This assertion is belied by the July 15, 2010, Addendum to Binder, which—

unlike the 30-day insurance binder also dated July 15, 2010—included no end date and provided

that “[a]ny loss or damage arising under this policy shall first be paid to Cornerstone … to the

extent of its judgment lien.” ANPAC filed a motion for declaratory judgment to determine to

whom to pay the insurance proceeds and, after Cornerstone served ANPAC with a garnishment

action, ANPAC paid the insurance proceeds into the trial court to hold until it could be

 18
determined to whom the proceeds belonged. The trial court in its Disbursement Order released

the insurance proceeds to Cornerstone.

 In 2018, the Ponzars filed their Motion to Vacate arguing again that they were the proper

loss-payees of the insurance proceeds, pointing to a 2017 Affidavit of Tim Barnes (“Barnes”), a

Senior Litigation Specialist with ANPAC. The affidavit was prepared incident to litigation in a

separate cause of action filed by the Ponzars against ANPAC in the St. Charles County Circuit

Court, Case No. 1511-CC00588. In the Affidavit, Barnes recounted the history of the Ponzars’

business with ANPAC, including that the insurance proceeds had been deposited with the St.

Charles County Circuit Court and thus ANPAC had paid all sums due and owing under the

policy, and he attested, “[t]he sums due and owing under the terms of the policy were owed to

Kurt and Sandra Ponzar.” The Ponzars characterized this statement as an admission by ANPAC

that Cornerstone was not a proper loss-payee under the homeowner insurance policy, despite the

court order to the contrary. Barnes’s affidavit, however, is not dispositive of the issue of who

was the proper loss-payee of the ANPAC insurance policy. As this record shows, contrary to

Barnes’s affidavit, the sums were not “due and owing” to the Ponzars under the terms of the

policy; rather, the sums were due and paid to Cornerstone in accordance with the Disbursement

Order. Moreover, the Ponzars failed to explain the context of the affidavit, failed to clarify if

ANPAC was intentionally and specifically stating Cornerstone was not a loss-payee under the

policy despite having paid the insurance proceeds to Cornerstone, and failed to explain how the

affidavit’s “admission” trumps the 2011 court order reaching a directly contrary finding. Under

the record here, which showed Cornerstone to be a loss-payee under the Addendum to Binder of

the ANPAC insurance policy, an unexplained contrary statement from ANPAC with uncertain

context is not persuasive evidence that the trial court should vacate its 2011 Disbursement Order.

 19
We therefore see no abuse of discretion here in the trial court’s denial of the Motion to Vacate.

See Soderholm v. Nauman, 466 S.W.3d 610, 617 (Mo. App. W.D. 2015) (appellate courts will

not interfere with trial court’s decision to reject motion to reopen case for additional evidence

unless abuse of discretion appears). Under the circumstances here where the court order has

been in place since 2011 and the funds have long since been disbursed to Cornerstone, it would

be very difficult to overcome the abuse-of-discretion standard, and the Ponzars have not met this

high burden.

 Because we hold the trial court did not abuse its discretion in denying the Motion to

Vacate, the Disbursement Order’s conclusion that Cornerstone was the proper loss-payee entitled

to the insurance proceeds under the ANPAC policy still stands. Accordingly, Mrs. Ponzar’s

bankruptcy did not enjoin the trial court from determining Cornerstone’s rights under the

ANPAC policy. Neither the bankruptcy court’s automatic stay under 11 U.S.C. section 362(a),

nor the bankruptcy discharge under 11 U.S.C. section 524 affected the trial court’s authority to

determine Cornerstone’s rights under the ANPAC policy. It is not a matter of the trial court

determining the Ponzars’ right to the ANPAC insurance policy, but of the trial court determining

Cornerstone’s right to the ANPAC insurance policy, which was not subject to the bankruptcy

stay.

 Points V and VI are denied.

 Conclusion

 Although the trial court’s judgment erroneously concluded it did not have the authority

under Rule 75.01 to vacate the Disbursement Order, the trial court did not abuse its discretion in

denying the Ponzars’ Motion to Vacate that Order. Therefore, the judgment of the trial court is

affirmed.

 20
 Robin Ransom, Presiding Judge
Sherri B. Sullivan, J., and
Lisa P. Page, J. concur.

 21